**Frank Igwebuike ENWONWU, Petitioner,**

v.

**Alberto R. GONZALES, Attorney General of the United States, Respondent.**

No. 05–2053.

United States Court of Appeals, First Circuit.

Heard Jan. 11, 2006.

Decided Feb. 13, 2006.

Robert B. Carmel–Montes and Morton Sklar of the World Organization for Human Rights USA, with whom The Carmel Law Group was on brief, for petitioner.

Andrew C. MacLachlan, Office of Immigration Litigation, Civil Division, United States Department of Justice, with whom Peter D. Keisler, Assistant Attorney General, and David V. Bernal, Assistant Director, were on brief, for respondent.

Before LYNCH and HOWARD, Circuit Judges, and CAMPBELL, Senior Circuit Judge.

LYNCH, Circuit Judge.

Frank Igwebuike Enwonwu is a Nigerian who entered the United States in 1986 as a heroin drug courier, on behalf, he said, of members of the Nigerian military. He was convicted the same year of federal drug felony crimes, which made him an aggravated felon for immigration law purposes. *See* 8 U.S.C. § 1101(a)(43)(B). He agreed to cooperate with the government and avoided imprisonment in exchange for being an informant.

Some years later, in 1997, the INS served on him a Notice to Appear to show cause why he should not be deported. As an aggravated felon he was eligible for neither asylum nor withholding of removal; in 1999, however, he became eligible and applied for relief under the Convention Against Torture (CAT). The Immigration Judge (IJ) who considered his CAT claim ruled that he had met his burden of showing he would be tortured if returned to Nigeria. The Board of Immigration Appeals (BIA) disagreed, reversed the IJ, and later denied Enwonwu's motion to reopen. Enwonwu did not petition this court for review of those two decisions.

Faced with removal, Enwonwu brought a habeas action in federal district court in Boston on the basis, inter alia, that removing him from the United States would violate substantive due process under the state-created danger theory because he is likely to be tortured on his return to Nigeria. The district court, which had habeas jurisdiction at the time pursuant to 28 U.S.C. § 2241, held evidentiary hearings and prepared findings of fact. On May 11, 2005, that court lost jurisdiction under the terms of the new REAL ID Act, Pub.L. No. 109–13, § 106, 119 Stat. 302, 311 (2005) (codified as amended at 8 U.S.C. § 1252 note), and the case was transferred to this court. Nonetheless, the district court wrote an advisory opinion on what it was prepared to find, *see generally Enwonwu v. Chertoff*, 376 F.Supp.2d 42 (D.Mass.2005), including that Enwonwu should prevail on his state-created danger theory, *id.* at 74.

In this court Enwonwu continues to press three major issues and some minor ones. He again makes a habeas-type constitutional claim on the state-created danger substantive due process rights theory. He also argues that the REAL ID Act is unconstitutional under the Suspension Clause, U.S. Const. art. 1, § 9, cl. 2, and that as a result the case must be returned to the district court. Finally, he makes a classic petition for review challenge to the BIA's determination that he is not eligible for CAT relief and to its denial of his motion to reopen, a claim also made in the habeas petition. The Department of Homeland Security (DHS) concedes that this court has jurisdiction to review all of

these issues.[1]

This opinion, then, addresses three claims: (1) that Enwonwu may not be removed from this country because it would violate constitutional substantive due process rights; (2) that the REAL ID Act itself is unconstitutional, and (3) that the BIA decision reversing the IJ's determination that Enwonwu had met the burden for CAT protection must be vacated.

We hold as a matter of law, regardless of the facts in this case, that a non-citizen trying to avoid removal from the country states no substantive due process claim on a state-created danger theory. As a result, in this case there is no possible claim that the REAL ID Act violates the Suspension Clause. Further, the case does not fairly raise Enwonwu's other arguments as to the constitutionality or proper interpretation of the REAL ID Act and so we do not reach those issues. Finally, utilizing our normal standards on petition for review of the BIA's decision on CAT relief, we remand to the BIA for further consideration of the CAT issue.

## I.

### *Prior Administrative Proceedings*

Enwonwu first appeared before an IJ pursuant to a June 6, 1997, Notice to Appear. The INS alleged Enwonwu's remov- ability and his ineligibility for asylum or withholding of deportation, based on his 1986 conviction for importation of heroin in violation of 21 U.S.C. §§ 952, 960, and 963, and his five-year prison sentence.[2] The IJ agreed and ordered Enwonwu deported to Nigeria.

The BIA affirmed. On June 2, 1999, however, the BIA granted Enwonwu's motion to reopen proceedings on the ground that he had become eligible for relief under Article 3 of the newly applicable CAT.[3] The BIA remanded the case to the IJ to provide Enwonwu an opportunity to apply for CAT protection.

On remand, the IJ held additional hearings and concluded on December 16, 1999, that Enwonwu had met his burden for deferral of removal under the CAT. The IJ found that Enwonwu had smuggled heroin from Nigeria into the United States, and that after he was apprehended, he "cooperate[d] with the Drug Enforcement Administration and provided names" of his co-conspirators. The IJ said he disbelieved Enwonwu's testimony that Enwonwu had told the DEA that "high level [Nigerian] military official[s]" were among his co-conspirators. Nonetheless, the IJ found that "the respondent was involved with others in Nigeria and there also remains the possibility that the people with

---

1.  It concedes our jurisdiction as to the CAT claim only insofar as the claim involves an issue of law. *See* Part VI, *infra.*

2.  The prison term was suspended, and Enwonwu also was sentenced to parole and supervised release. The fact that the sentence was suspended is irrelevant to the removability and asylum eligibility analyses. *Sousa v. INS,* 226 F.3d 28, 33 n. 4 (1st Cir.2000) (citing 8 U.S.C. § 1101(a)(48)(B)).

3.  The United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100–20 (1988), 1465 U.N.T.S. 113, provides that "[n]o State Party shall expel, return (*refouler*) or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." *Id.* art. 3, § 1. It entered into force in the United States in November 1994, *see* Regulations Concerning the Convention Against Torture, 64 Fed.Reg. 8478, 8478 (Feb. 19, 1999) (background); however, it was not given domestic effect until 1998, *see Saint Fort v. Ashcroft,* 329 F.3d 191, 195, 202 (1st Cir.2003) (citing Foreign Affairs Reform and Restructuring Act, Pub.L. No. 105–277, § 2242, 112 Stat. 2681, *2681–761, *2681–822 (1998)).

whom he was involved were indeed connected to the military or the Government."

The IJ found that "the Nigerian prison system is a haven for human rights abuses and ... prisoners within that system are routinely beaten and tortured." He also found that "it is the policy and the law in Nigeria that those who have been convicted of drug trafficking crimes outside of that country are subject to arrest, detention, and prosecution on account of those convictions." The IJ accepted the testimony of University of California at Berkeley Professor Michael J. Watts. Watts had testified that (1) Nigeria is a major heroin trafficking center, (2) members of the "Nigerian elite" with links to the Nigerian government and military had a hand in the drug trafficking in the country, and (3) Enwonwu would be "highly identifiable" upon his return to Nigeria because "many people who do return to that country after even 10 to 15 years are ... arrested for grievances which the Government may have had against them which occurred a long time ago."

On the basis of this evidence, the IJ concluded that "it is more likely than not that the respondent would face torture if he were to be returned to Nigeria." The IJ reasoned that this was so because "either the Government would ... arrest him because of his conviction in the United States and subject him to imprisonment and potential torture because of the law in that country, or because of the interrelationship of the drug traffickers, the military and the Government, that retribution would be still sought against him because of his cooperation with the Drug Enforcement Administration." The IJ thus identified two alternative reasons for his finding as to the likelihood of torture: one general, applicable to anyone convicted of drug crimes who is repatriated to Nigeria, and

one specific to Enwonwu and his status as a cooperator and informant.

The DHS appealed, and on May 30, 2003, the BIA reversed the IJ's grant of CAT protection. It wrote:

> The Immigration Judge granted relief largely based on the fact that the respondent, under Nigerian law, will likely be subject to arrest, detention and prosecution on account of his drug conviction in the United States. We have previously held that a Nigerian convicted of a drug offense in the United States failed to establish eligibility for deferral of removal because the evidence she presented regarding the enforcement of [Nigerian law] could not meet the burden of proof for CAT.

On the strength of this precedent, the BIA concluded "that the mere possibility of arrest and prosecution in Nigeria does not establish that the respondent in this instance would more likely than not be subject to torture by a public official or with the acquiescence of such an official." It vacated the IJ's decision and ordered Enwonwu removed from the United States.

Enwonwu did not petition for review of the BIA's order in this court. On October 13, 2004, more than a year after the BIA decision, Enwonwu filed a motion to reopen with the BIA. He stated that he had not been notified of the DHS' appeal to the BIA or even of the BIA's decision, and that he therefore had had no chance to oppose the DHS' position or to appeal the BIA's order. The BIA denied Enwonwu's motion as untimely filed. It denied his lack of notice argument, finding that a notice of the DHS' appeal had been mailed to Enwonwu's attorney of record and that Enwonwu, who was supposed to inform the government of any change of address, had failed to do so when he moved after the date of the October 1999 order which granted him CAT protection.

## II.

### *Prior Court Proceedings*

On March 17, 2005, Enwonwu initiated habeas corpus proceedings in the district court. He argued (1) that his right to procedural due process was violated when the BIA issued its orders without providing him with sufficient notice of the proceedings, (2) that he had met his CAT burden and the IJ's finding to that effect should have been permitted to stand, and (3) that the BIA's order violated his substantive due process rights because his removal to Nigeria would subject him to a government-created danger.

On April 11, 2005, the district court granted Enwonwu an emergency stay of deportation. It then conducted a four-day evidentiary hearing, taking testimony from Enwonwu, DEA agents who had dealt with Enwonwu after his 1986 arrival, and other witnesses.

The hearing ended on May 3, 2005. Eight days later, before the district court issued a decision, the REAL ID Act took effect, stripping the district court of its habeas jurisdiction in this case and mandating that it transfer the case to this court. *See* REAL ID Act § 106(c) (transferring existing § 2241 habeas cases involving challenges to "final administrative order[s] of removal" to the court of appeals, which is to "treat the transferred case as if it had been filed pursuant to a petition for review"). The district court did transfer the case after writing the advisory opinion. *See Enwonwu,* 376 F.Supp.2d at 85.

In that advisory opinion, the district court made extensive findings of fact relating to Enwonwu's dealings with the DEA, based in part on evidence which had not been presented to the IJ. *Id.* at 43–59. As for Enwonwu's procedural due process argument based on lack of notice, the district court concluded that it should fail. It found that notice of the BIA's appeal was served on Enwonwu's attorney of record, which is all that is required under the applicable regulations. *Id.* at 62–63.

As for Enwonwu's CAT claim, the district court dealt with it in two analyses. First, it characterized the claim as an argument that the BIA decision was so flawed as to constitute a denial of due process, and so found. It noted that "[a]bsent from the BIA's decision is any acknowledgment of th[e] evidence [that Enwonwu would face retribution because of his cooperation with the DEA] or the portion of the hearing officer's decision which relied upon it." *Id.* at 68. It concluded that such a failure to consider all the evidence offended due process, *id.* at 64–65 (citing, inter alia, *Anniston Mfg. Co. v. Davis,* 301 U.S. 337, 357, 57 S.Ct. 816, 81 L.Ed. 1143 (1937)), and recommended as relief that the case be remanded to the BIA for reconsideration.

The district court also analyzed separately a different ground for relief. It recommended that Enwonwu's "state-created danger" claim—that his substantive due process rights were violated when the government put him in danger by enticing him to be an informant and then sought to send him to the place where that danger would be most acute—should succeed. It found that government agents had coerced Enwonwu into serving as an informant by promising him protection, *id.* at 59, and concluded: "For the executive to subject Enwonwu to the risk of deadly retribution by inducing his cooperation though promises of protection and then force him to face that retribution is utterly egregious and intolerable," *id.* at 74. The court rejected the DHS' argument that as an alien, Enwonwu had no substantive due process rights, saying: "Enwonwu does not claim a substantive due process right to remain in

the United States, but the right to live and the right to be free from state sanctioned torture, the danger of which, he alleges, the executive created." [4] *Id.* at 70.

Finally, the district court suggested that the REAL ID Act's transfer of § 2241 petitions to the courts of appeals, where they are to be treated as petitions for review, may be an unconstitutional limitation on habeas corpus. Though it ultimately made no recommendation as to the provision's constitutionality, it noted that aliens like Enwonwu "are now without the benefit of the district courts' experience in conducting searching evidentiary hearings." *Id.* at 83.

## III.

### A. *Immigration Law and Separation of Powers*

Under the Constitution, the tasks of defining how aliens are admitted to the United States, whether and under what conditions they may stay, and under what conditions such an alien will be removed or may avoid removal, are committed to Congress. *See, e.g., Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977); *Galvan v. Press,* 347 U.S. 522, 531–32, 74 S.Ct. 737, 98 L.Ed. 911 (1954). Congress has determined that aliens who commit the crime of smuggling heroin into the United States are subject to removal. [5] *See* 8 U.S.C. § 1182(a)(2)(A)(i)(II), (C); *id.* § 1229a(e)(2). The IJ properly found Enwonwu inadmissible as a controlled substance trafficker, *id.* § 1182(a)(2)(C), and as an alien convicted of a controlled substance violation (other than simple possession of 30 grams or less of marijuana), *id.* § 1182(a)(2)(A)(i)(II). These grounds of inadmissibility may not be waived.

There is no question that Enwonwu committed the crimes in question, crimes which constitute an aggravated felony, *id.* § 1101(a)(43)(B), and which resulted in a sentence of five years or more of imprisonment, *id.* § 1101(a)(48)(B). As such, Enwonwu committed "a particularly serious crime" and is not eligible for consideration for asylum. *Id.* § 1158(b)(2)(A)(ii). Further, he is considered a danger to the

---

4. The remedial effect of such a ruling would, of course, differ from a mere remand to the BIA. It would preclude the BIA from ordering removal to Nigeria.

5. We granted permission for Enwonwu, although represented by counsel, to file a pro se brief, in which he raised three issues. One of these issues is different from those discussed in the text. He argues that the IJ and BIA were wrong in concluding that he was removable. His argument proceeds as follows: He says the INS issued him a visa extension subsequent to his 1986 conviction, and that visa extension meant he was admitted to the United States. Since he was admitted, he argues, he is only removable if he is "deportable." *See* 8 U.S.C. § 1229a(e)(2)(B). He argues that he is not "deportable" because two of the statutory clauses defining "deportability"—8 U.S.C. § 1227(a)(2)(A)(iii) and (B)(i)— limit the term to aliens who have been convicted of crimes *after* admission, whereas he was convicted of a crime *before* admission.

This argument fails, at the least, because Enwonwu is deportable for a separate reason. Under 8 U.S.C. § 1227(a)(1)(A), "[a]ny alien who at the time of entry or adjustment of status was ... inadmissible by the law existing at such time is deportable." Because of his felony conviction, Enwonwu is inadmissible under current law, *id.* § 1182(a)(2)(C), and was inadmissible under all prior versions of § 1182 dating back to 1986 and beyond. *See id.* § 1182(a)(23) (1982) (rendering "excludable" "[a]ny alien who has been convicted of a violation of ... any law or regulation relating to the illicit possession of or traffic in narcotic drugs"); *Guaylupo–Moya v. Gonzales,* 423 F.3d 121, 125 n. 2 (2d Cir.2005) (noting the term "inadmissible" replaced the term "excludable" in 1996) (citing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, § 308(d), 110 Stat. 3009, *3009–616 to *3009–617).

community and so is not eligible for withholding of removal. *Id.* § 1231(b)(3)(B)(ii), (iv); 8 C.F.R. § 208.16(c)(2). He is also not eligible for cancellation of removal because of his conviction. 8 U.S.C. § 1229b(a)(3), (b)(1)(C).

Nonetheless, the law changed to provide one possible avenue of relief for Enwonwu to avoid return to Nigeria, under the CAT. Article 3 of the CAT prohibits "refoulement," or return, of an alien to a country where there are substantial grounds for believing that he or she would be in danger of being subjected to torture. *See Mediouni v. INS*, 314 F.3d 24, 26 n. 2 (1st Cir.2002). Against the background of Article 3, Enwonwu asks us to recognize a new constitutional right which prohibits the government from removing him from the United States, or at least from removing him to Nigeria. As to the violation of that purported right, he argues he is entitled to the remedy of release from DHS custody entirely.[6]

He argues that an alien has a substantive due process right not to be removed from the United States to a state-created risk, or at least not to be removed to the country where he faces greater danger on account of the state-created risk. As Enwonwu puts it: "If the DHS were to remove Mr. Enwonwu to Nigeria, it would be placing him in a position more dangerous tha[n] it found him and the Constitution prohibits this." The United States created this risk, according to Enwonwu, when (1) agents ran a drug sting operation in order to place him in a position in which he would cooperate; (2) the DEA and DHS refused to assist Enwonwu in his effort to ensure he would not be removed, even though the agencies knew he would be at high risk; and (3) the DHS actively tried to remove him.

## B. *The Substantive Due Process Argument Fails to State a Constitutional Claim*

■ Perhaps if there were such a serious procedural irregularity as to affect those procedural rights recognized for aliens, Enwonwu could state a procedural due process claim. However, there can be no *substantive* due process objection to the order removing Enwonwu. The state-created danger theory argument fails because an alien has no constitutional substantive due process right not to be removed from the United States, nor a right not to be removed from the United States to a particular place.[7] We disagree with the dis-

---

6. *See Zadvydas v. Davis*, 533 U.S. 678, 689–90, 695, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (rejecting the proposition that "aliens that the Government finds itself unable to remove are to be condemned to an indefinite term of imprisonment within the United States" and holding that, consistent with due process, "an alien's post-removal-period detention" must be limited "to a period reasonably necessary to bring about that alien's removal from the United States").

7. One might think that the problem could be mooted by simply removing Enwonwu to a country other than Nigeria. The respondent admits this is not a solution and that the issue before us is ripe. It is true that aliens such as Enwonwu are not necessarily removed to their native countries: They may designate a country to which they want to be removed, and the Attorney General is statutorily commanded to accede to that designation provided certain conditions (e.g., the approval of the designated country) are met. 8 U.S.C. § 1231(b)(2). As a practical matter, however, if the alien does not designate a country, the Attorney General has little choice but to remove him to the country of which he is a subject, national, or citizen. *Id.* § 1231(b)(2)(D) (mandating that the Attorney General "shall remove" the alien to that country unless the country is unwilling to accept the alien or refuses to say whether it will accept him). The respondent has represented that there is no reason to believe any other country would accept Enwonwu, a convicted heroin smuggler.

trict court's conclusion that such a right could exist on any set of facts, including the facts in this case. The theory itself simply is not viable; it does not state a claim on any facts.[8]

Our holding does not rely on the reasoning that this circuit has never embraced the existence of a substantive due process state-created danger theory, even for citizens. *See Velez–Diaz v. Vega–Irizarry*, 421 F.3d 71, 80–81 & n. 3 (1st Cir.2005); *Rivera v. Rhode Island*, 402 F.3d 27, 35 (1st Cir.2005). Whether or not the state-created danger theory is viable for citizens, it is not viable for non-citizens seeking to avoid removal from this country.

Nor do we rely on the reasoning that the facts here, as alleged or found, are insufficient to bring Enwonwu within the scope of a state-created danger theory. Even if this circuit did recognize such a theory as to *citizens*, and even assuming *dubitante* that these facts come within such a theory, the cause of action still would not exist as a defense against removal of an alien.

We also do not rely on the reasoning that the state-created danger theory is itself (to the extent *other* courts have recognized it) limited to cases where the harm has been done and there is an action for damages, as opposed to anticipatory-harm cases such as this one, where the relief sought is to restrain the government from taking action. *See, e.g., Kneipp v. Tedder*, 95 F.3d 1199, 1208 (3d Cir.1996) (recognizing state-created danger theory in *post factum* damages action); *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir.1995) (same); *Dwares v. New York*, 985 F.2d 94, 99 (2d Cir.1993) (same). Finally, we do not rest on the fact that if any threat exists to Enwonwu, it is from the Nigerian authori-

ties upon his return to Nigeria, not from the United States.

Our holding rests instead on the constitutional assignment of responsibilities among the three branches of the federal government over matters of immigration. *See* U.S. Const. art. I, § 8 (granting Congress power to "provide for the common Defence and general Welfare of the United States," to "regulate Commerce with foreign Nations," and to "establish a uniform Rule of Naturalization"); *id.* art. II, § 3 (stating that the President "shall take Care that the Laws be faithfully executed"). By entertaining the state-created danger theory as means for relief from a removal order, a court, whether sitting in habeas or in judicial review, steps outside its defined constitutional role and intrudes into a realm reserved to the Executive and the Legislative Branches. *See Galvan*, 347 U.S. at 530–3, 74 S.Ct. 7371 (noting because the question of "admission of aliens and their right to remain ... touch[es] ... basic aspects of national sovereignty, more particularly our foreign relations and the national security," "the formulation of these policies is entrusted exclusively to Congress," though the Executive, which enforces them, "must respect the procedural safeguards of due process"). The state-created danger theory is not a claim that an agency acted in a procedurally unlawful way to deny an applicant a fair hearing. Rather, it is an impermissible effort to shift to the judiciary the power to expel or retain aliens. That is a power the Constitution has assigned to the political branches.

If a reminder of this were needed at all, the Supreme Court in *Fiallo* said in 1977:

---

8. Because Enwonwu's habeas petition does not state a substantive due process claim at all, the district court should have dismissed this claim on its face and should not have heard evidence.

[O]ver no conceivable subject is the legislative power of Congress more complete than it is over the admission of aliens. Our cases have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.

430 U.S. at 792, 97 S.Ct. 1473 (citations and internal quotation marks omitted) (quoting *Oceanic Steam Navigation Co. v. Stranahan,* 214 U.S. 320, 339, 29 S.Ct. 671, 53 L.Ed. 1013 (1909); *Shaughnessy v. U.S ex rel. Mezei,* 345 U.S. 206, 210, 73 S.Ct. 625, 97 L.Ed. 956 (1953)); *see also Galvan,* 347 U.S. at 530–31, 74 S.Ct. 737 (rejecting the notion that the expansion of substantive due process might limit Congress' power over immigration, because "the slate is not clean"—"[a]s to the extent of the power of Congress under review, there is not merely a page of history, but a whole volume" (citation and internal quotation marks omitted)).

We hold that this state-created substantive due process claim by an alien seeking to avoid removal from the United States is not an actionable constitutional claim at all. On this point, we agree with the Third Circuit. *Kamara v. Attorney Gen.,* 420 F.3d 202, 218 (3d Cir.2005).

This is not to say there is no possible remedy for petitioners in situations like Enwonwu's. Congress and the Executive are not ignorant of the problem and have established an alternative approach: For aliens who have committed aggravated felonies and are in particular danger of being tortured following removal, there is the remedy of relief under the CAT for those who qualify. "Under the CAT, the United States is prohibited from returning an alien to a country if 'there are substantial

grounds for believing the [alien] would be in danger of being subjected to torture.'" *Ang v. Gonzales,* 430 F.3d 50, 58 (1st Cir.2005) (alteration in original) (quoting Foreign Affairs Reform and Restructuring Act, Pub.L. No. 105–277, § 2242, 112 Stat. 2681, *2681–822 (1998)). We deal with that issue separately.

C. *The Notice–Based Procedural Due Process Argument Also Fails to State a Claim*

■ We quickly dispose of Enwonwu's claim that his procedural due process rights were violated because he received insufficient notice of the DHS' appeal from the IJ's decision granting CAT relief. The DHS filed its notice of appeal within thirty days, and that notice was mailed to Enwonwu's counsel of record at the address of record.[9] The BIA correctly concluded that there was no failure of notice to Enwonwu under the applicable regulations. *See* 8 C.F.R. § 1292.5(a) (any required notice "shall be ... served by or upon ... the attorney or representative of record"). Under these circumstances, there is not even a colorable claim for denial of procedural due process stemming from the BIA's decision not to reopen. *Mehilli v. Gonzales,* 433 F.3d 86, 93–94 (1st Cir. 2005).

**IV.**

*The REAL ID Act*

The case was properly transferred to this court under the REAL ID Act. *Ishak v. Gonzales,* 422 F.3d 22, 29–30 (1st Cir. 2005); *Sena v. Gonzales,* 428 F.3d 50, 52 (1st Cir.2005) (per curiam). The claims are now reviewed as a petition in the court of appeals, which is now the exclusive

---

9. Counsel of record moved at some point, though he did not deny receipt of the notice of appeal. In any event, he did not forward the notice to Enwonwu.

means for judicial review of an order of removal. *Ishak,* 422 F.3d at 27; *see also* REAL ID Act § 106(a).

## A. *Parties' Arguments*

Enwonwu argues that the change effected by the REAL ID Act—the elimination of § 2241 habeas jurisdiction as to orders of removal in favor of consolidated review in the court of appeals—narrows the relief that was available in habeas, raising constitutional issues. He bases his argument on the Suspension Clause:

> The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it.

U.S. Const. art. 1, § 9, cl. 2.

Enwonwu argues first that the federal courts of appeals, engaging in normal petition-for-review oversight of BIA decisions, may have a narrower scope of review than did district courts sitting in habeas and that this would violate the Suspension Clause. *Cf. Swain v. Pressley,* 430 U.S. 372, 381, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977) (writ is not suspended where an "adequate and effective" alternative remedy is provided). Second, he argues, the appeals courts lack the fact-finding capability of district courts; a capability essential in his case and others like it because he raises "constitutional claims requiring fact-finding efforts." He further argues that the Act "imposes [a] . . . time limit on the filing of habeas related claims that did not previously exist" because there was no deadline for habeas filings, whereas there is a thirty-day time limit, under both the REAL ID Act and previous law, for peti-

tions for review. Finally, he suggests that aliens who have already completed the petition for review process may be deemed to have lost a pre-existing habeas right altogether, since presumably they will not be permitted to petition the court of appeals a second time on the same issue.

The DHS responds that the supposed infirmities Enwonwu identifies do not arise in this case. It offers its own, very different proposal as to where any fact-finding necessary to a REAL ID Act proceeding would take place. The DHS position is that all fact-finding, if the court of appeals deems any necessary, must occur in the administrative agency, before the IJ on remand, and not in the courts. In DHS' view, the court of appeals may not do fact-finding itself, or designate anyone to act as a fact-finder for it.

As to any potential differences in the standard and scope of review, the DHS points out that under the REAL ID Act the court of appeals may consider all "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D); it argues that this is the sort of "adequate and effective" substitute for habeas review that the Supreme Court has required. *See Swain,* 430 U.S. at 381, 97 S.Ct. 1224. Second, it argues that Enwonwu's claim based on the supposed incapacity of the courts of appeals to find facts, directly or through a designee, fails: it says that under the REAL ID Act, a court of appeals in need of fact-finding to determine a constitutional question can remand to the agency, which has the power to find facts, though not to rule on any constitutional issues raised.[10] As to Enwonwu's remaining ar-

---

**10.** DHS says that even before the REAL ID Act, this sort of fact-finding remand to the agency was the practice of district courts sitting in habeas and reviewing constitutional challenges to BIA decisions. This does not appear to be so. The case DHS cites for the

proposition, *INS v. Ventura,* 537 U.S. 12, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002), does not support it, and various appellate and district court decisions are to the contrary, *see, e.g., Magana–Pizano v. INS,* 200 F.3d 603, 610 (9th Cir.1999); *Wahab v. Attorney Gen.,* 373

guments, the DHS suggests he lacks standing because the changes in question do not affect him and there is therefore no "injury in fact."

## B. *Analysis*

■ On the limited issues actually presented in the case, we reject Enwonwu's argument.

In *Saint Fort v. Ashcroft*, 329 F.3d 191 (1st Cir.2003), which followed the Supreme Court's decision in *INS v. St. Cyr*, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), this court held that § 2241 habeas corpus jurisdiction remained in effect even when judicial review of denial of CAT claims was constricted by statute. *Saint Fort*, 329 F.3d at 200–02. To hold otherwise, we found, would pose serious questions under the Suspension Clause. *Id.* at 201–02. We said "[t]he scope of habeas review is not the same as the scope of statutory judicial review in the courts of appeal." *Id.* at 203 (citing *Heikkila v. Barber*, 345 U.S. 229, 236, 73 S.Ct. 603, 97 L.Ed. 972 (1953)). Habeas review encompassed, at a minimum, "constitutional claims that are at least colorable," "colorable claims that an alien's statutory rights have been violated," and "pure issues of law." *Id.* (declining to reach the question of whether "pure issues of law" includes application of legal principles to undisputed facts). In *St. Cyr*, the Supreme Court likewise held that federal courts retained § 2241 habeas jurisdiction at least as to questions of law, even in the case of crimi-

nal aliens. 533 U.S. at 314, 121 S.Ct. 2271 (also outlining other areas in which habeas provided for review).

These cases analyzed the landscape prior to the REAL ID Act. Now, under the provisions of the REAL ID Act, Congress has eliminated habeas review as to most types of immigration claims. *See, e.g.*, 8 U.S.C. § 1252(a)(5). However, the REAL ID Act also grants this court full review of "constitutional claims or questions of law." 8 U.S.C. § 1252(a)(2)(D); *Mehilli*, 433 F.3d at 92; *accord Kamara*, 420 F.3d at 209–10.

This case presents only pure questions of law, and so the Act encompasses at least the same review and the same relief as to Enwonwu as were available under prior habeas law. *See St. Cyr*, 533 U.S. at 314 n. 38, 121 S.Ct. 2271 (noting in dicta that "[a]s to the question of timing and congruent means of [habeas] review, ... Congress could, without raising any constitutional questions, provide an adequate substitute through the courts of appeals" (citing *Swain*, 430 U.S. at 381, 97 S.Ct. 1224)). We need not decide here whether the Act affords greater relief than that previously available to aliens under § 2241.[11] *See, e.g.*, *Kamara*, 420 F.3d at 215 n. 11.

We have no need to address the other arguments about the proper functioning of the REAL ID Act and its constitutionality, because those questions are not presented on these facts. The substantive due process state-created danger theory fails to

---

F.Supp.2d 524, 525 (E.D.Pa.2005) (noting that prior to the REAL ID Act, aliens fighting removal via habeas were "allowed ... to proffer evidence [to the district court] at an evidentiary hearing" pursuant to 28 U.S.C. § 2243).

11. It is ironic that Enwonwu's primary attack is on the REAL ID Act. The REAL ID Act gave Enwonwu greater rights than he had at the time he filed his habeas petition because it for the first time gave criminal aliens the right to seek judicial review of the CAT, and it reinstated his ability to seek standard appellate judicial review of the BIA's decision although he missed the 30–day deadline. By attacking the REAL ID Act, he is attacking the hand which opened the door to let him back into court to seek judicial review.

state a constitutional claim at all, and while there are procedural due process constraints on removal proceedings, *see generally Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993), no colorable due process claim is stated about the BIA's denial of the motion to reopen. The only issues presented for these purposes are pure ones of law.[12] Since there are no colorable constitutional issues, there is no need for fact-finding as to those issues. The same logic applies to the other supposed infirmities Enwonwu identifies, including time limits on filing: since none has worked a deprivation on Enwonwu, the issues are not presented and we need not reach them to resolve his case.

## V.

### *Statutory Review of BIA Denial of CAT Relief*

#### A. *Jurisdiction*

Finally, we reach Enwonwu's argument that the BIA erred when it reversed the IJ's determination as to CAT protection.[13]

Under pre-REAL ID Act law, Enwonwu would have faced two jurisdictional hurdles to review of this claim. First, he did not petition this court for review of the BIA's final order of removal, dated May 30, 2003; this rendered his challenge untimely under pre-REAL ID Act law. *See* 8 U.S.C. § 1252(b)(1) (petition for review must be filed not later than thirty days after final order of removal). However, § 106(c) of the REAL ID Act states that when the district court transfers a pending habeas case to this court, we are to treat it "as if it had been filed pursuant to a petition for review under [§ 1252], except that subsection (b)(1) of such section shall not apply." § 106(c), 119 Stat. at 311. The "subsection (b)(1)" to which the statute refers is the thirty-day time limit. Here, as in *Ishak,* the DHS has conceded that this provision of the REAL ID Act negates the time limit issue and that we have jurisdiction. *See* 422 F.3d at 29.

Second, under pre-REAL ID Act law, an alien convicted of an aggravated felony and removable on such grounds was statutorily barred from petitioning a court of appeals for direct review of the BIA's finding that he was ineligible for CAT relief.[14] *See* 8 U.S.C. § 1252(a)(2)(C). The REAL ID Act has eliminated this barrier as to "constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals." *Id.* § 1252(a)(2)(D); *see Kamara,* 420 F.3d at 211 (noting that REAL ID Act's jurisdictional grant in CAT appeals by aggravated felons extends not just to legal determinations but also to application of law to facts); *Hamid v. Gonzales,* 417 F.3d 642,

---

**12.** To the extent Enwonwu makes an argument that deference is owed to a district court on its determination of a pure issue of law, we reject the argument. Putting aside the advisory nature of the district court's opinion, our review of issues of law is de novo. *See Maine v. Dir., U.S. Fish & Wildlife Serv.,* 262 F.3d 13, 17 (1st Cir.2001) ("Decisions on abstract issues of law are always reviewed de novo . . . ." (quoting *Cotter v. Mass. Ass'n of Minority Law Enforcement Officers,* 219 F.3d 31, 34 (1st Cir.2000))).

**13.** The DHS argues that Enwonwu waived this argument by failing to assert it in his habeas petition or on appeal. We reject this contention. While Enwonwu's main focus before both the district court and this court was on constitutional issues, he offered sufficient argumentation as to the correctness of the IJ's CAT decision, and as to the flaws in the BIA's decision overturning the IJ, to preserve the claim.

**14.** The alien could still have brought a habeas challenge to the BIA's decision, but the proper scope of review would then have been an issue. *See Saint Fort,* 329 F.3d at 202–03.

647 (7th Cir.2005) (under the REAL ID Act, court of appeals may review constitutional and legal questions "relevant to a petitioner's claim for relief under CAT, despite his aggravated felony conviction"). The DHS so concedes.

### B. *The BIA's Decision*

■ In its decision reversing the grant of CAT relief, the BIA rejected the IJ's first finding as to why Enwonwu had met the CAT burden—that "the Government would … arrest him because of his conviction in the United States and subject him to imprisonment and potential torture." The BIA reasoned that, as a general matter, possible arrest and prosecution in Nigeria are insufficient to establish a prima facie case for CAT protection.

However, the IJ also made a second finding—that "because of the interrelationship of the drug traffickers, the military and the Government, … retribution would be still sought against [Enwonwu] because of his cooperation with the Drug Enforcement Administration." The IJ made explicit findings of fact in support of this conclusion, discussed it at length, and found that this second ground sufficed to meet Enwonwu's CAT burden. The BIA did not address this finding at all.

■ In circumstances such as these, the opinion is insufficiently reasoned as a matter of law. *See Halo v. Gonzales,* 419 F.3d 15, 18 (1st Cir.2005); *Gailius v. INS,* 147 F.3d 34, 46–47 (1st Cir.1998) (holding that the BIA is obligated to "state with sufficient particularity and clarity" the reasons for its findings as to claims for relief from removal) (quoting *Hartooni v. INS,* 21 F.3d 336, 343 (9th Cir.1994)); *see also NLRB v. Pan Am. Grain Co.,* 432 F.3d 69, 94 (1st Cir.2005) (noting that the court did not "understand the [NLRB's] rationale" and that while the Board's "result may or may not be sound, … until we understand

its basis, we cannot effectively review it"). The agency need not spell out every last detail of its reasoning where the logical underpinnings are clear from the record. *See Sulaiman v. Gonzales,* 429 F.3d 347, 350 (1st Cir.2005). However, the agency "is obligated to offer more explanation when the record suggests strong arguments for the petitioner that the [agency] has not considered." *Id.*

We remand to the BIA for expedited further consideration of the CAT issue in light of its failure to address the second ground in the IJ's decision. *See Gailius,* 147 F.3d at 47; *see also Pan Am. Grain,* 432 F.3d at 74–75. We intimate no view on the proper resolution of the CAT question.

### VI.

The constitutional claims presented by petitioner are dismissed. Otherwise, the case is *remanded* to the BIA for further proceedings consistent with this opinion. So ordered.