# United States Court of Appeals

## For the First Circuit

No. 05-1076

ALTIN HALO; ESMERALDA HYSENAJ,

Petitioners,

v.

ALBERTO GONZALES,
Attorney General of the United States,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before
Selya, Lynch and Lipez, Circuit Judges.

Charles Christophe and Christophe & Associates, P.C., on brief for petitioners.
William J. Schneider, Assistant United States Attorney, and Paula D. Silsby, United States Attorney, on brief for respondent.

August 17, 2005

**LYNCH**, **Circuit Judge**.  Altin Halo and Esmeralda Hysenaj are Albanian nationals whose applications for asylum, withholding of removal, and relief under the Convention Against Torture (CAT) were denied by the Immigration Judge (IJ).  That denial was affirmed by the Board of Immigration Appeals (BIA).  The two decisionmakers rested their conclusions on different grounds.  The IJ denied asylum on the basis that Halo, the lead applicant, was not credible.

The BIA noted the IJ's lack-of-credibility finding; however, it did not purport to adopt it.  Rather, the BIA found that

> even assuming the credibility of the testimony, the lead respondent would have failed to establish that the harms he claims to have suffered amounted to persecution on account of his political opinion (actual or imputed) or any other statutory basis for asylum and withholding of removal. We further find that background evidence in the record fails to show that a person such as the respondent would face a reasonable possibility of persecution, or a clear probability of persecution or torture if he were to return to Albania.

The BIA offered no further explanation for its conclusions.  Lacking such explanation, and given that the final agency decision does not rest on a lack-of-credibility determination, we are left with significant questions about the justifications for the denial.  We therefore vacate the BIA's order and remand.

Halo entered the United States via Canada in December 1999. On December 26, 2000, he filed an Application for Asylum and for Withholding of Removal.

The second petitioner, Hysenaj, entered the United States via Canada in November 2001. She and Halo were married at the Albanian Embassy in Washington, D.C., on April 16, 2002. On December 12, 2002, she presented herself to the INS[1] in Boston and was served with a Notice to Appear. The IJ granted Hysenaj's motion to consolidate her proceedings with Halo's, and the couple appeared jointly before the IJ on November 12, 2003.

What follows is a summary of Halo's testimony at the hearing: Halo's father and uncle were members of the Democratic Party in his hometown of Fier, and his uncle contributed significant amounts of money to the party. In February 1995, Halo -- who had been attending party meetings and demonstrations with his father and uncle since 1990 -- formally joined the party. He continued attending party rallies at least once a week. He also drove trucks for his uncle's business and served as his personal driver.

---

[1] On March 1, 2003, the relevant functions of the INS were transferred to the Department of Homeland Security, and the INS subsequently ceased to exist. See Homeland Security Act of 2002, Pub. L. No. 107-296, § 471, 116 Stat. 2135, 2205 (codified as amended at 6 U.S.C. § 291(a)).

From 1995 to 1997, the Democratic Party was in power and the demonstrations Halo attended were peaceful. But in June 1997, the Socialist Party was elected to power, and the Democrats began holding rallies to protest the Socialist victory. By 1998, Halo testified, baton-wielding government officials had begun coming to the Democratic rallies and breaking them up.

In 1998, Halo's uncle began to receive phone calls from Socialists asking him to drop his support for the Democrats and become a Socialist instead. Unidentified callers also called Halo's home at night and sought answers about what his uncle's political affiliations would be. Halo's father and uncle decided not to join the Socialists, but they talked to Halo about the possibility of switching his allegiance because he was the future of the family and they did not want him to have to suffer persecution. Halo rejected the idea of joining the Socialists and remained a Democrat.

In June 1998, several individuals wearing masks came to Halo's home. When his mother answered the door, they shoved her against a wall, entered the home, and grabbed Halo, telling his mother they were taking him to "verify some documents." They took Halo to the local police station, where he was held in a cell for three days. Halo was not given food during this time. On at least one occasion, his captors came into his cell, kicked him, and said "you don't like the Socialist Party." Halo offered few details on

the extent of his injuries from the beating, but he did say that when he was released, his family members were waiting for him outside the police station and they wept when they saw his condition.

Three months later, in September 1998, Halo participated in a Democratic Party demonstration in Fier. After party leaders left, police came to try to break up the demonstration. The police, who were wielding "sticks," arrested ten demonstrators, Halo among them. He was held for a week in a jail cell and given only small amounts of food. He testified that the arrests occurred because a Democratic Party leader had been assassinated and the government said it wanted to investigate whether the assassination plot had been "prepared in Fier."

Halo was arrested again in December 1998. He testified that the arrest was associated with the pressure the Socialist Party was putting on his uncle to publicly convert to Socialist membership. In fact, as part of the pressure tactics, the Socialists made calls to Halo's uncle while Halo sat in jail, threatening to kill Halo and all the members of the uncle's family.

After Halo was released, his uncle continued receiving threatening phone calls; the callers insulted him and again threatened to kill his family. Finally, in July 1999, Halo and his father and uncle decided Halo needed to flee the country to avoid harm. He fled to Italy, France, England, Canada, and then the

-5-

United States.   After Halo left Albania, his uncle was assassinated.   Halo claimed the Socialist Party was behind the killing.   He also testified that the Socialists are still in power in Albania, that his relatives in Albania fear for their safety in the wake of his uncle's death, and that he believes he too will be killed if he returns to the country.

After hearing Halo's testimony, the IJ issued an oral decision rejecting Halo and Hysenaj's application for relief.   The IJ's main rationale was an adverse credibility finding.   The IJ noted, inter alia, that (1) Halo's original asylum application did not mention that he had been a member of the Democratic Party or that he had been detained or beaten; (2) there was conflicting evidence about how, when, and even whether Halo's uncle was killed, and no corroborating evidence that the uncle had been politically active; and (3) it did not seem logical that Halo would wait more than six months after his last arrest before fleeing Albania. Given those findings, the IJ concluded that Halo's claim was "simply a preconceived idea of coming to the United States and starting a better life."   The IJ also stated that even if Halo was detained on the three occasions he identified, that did not constitute a pattern of mistreatment and thus he had not established that he had been persecuted in the past or that he harbored a well-founded fear of future persecution.

The BIA affirmed, but on different grounds. As explained above, the BIA assumed Halo's credibility and wrote, without explanation, that he had not made a showing of persecution sufficient to justify relief.

**II.**

In evaluating a BIA denial of asylum, our review is aimed at determining whether the decision is supported by substantial evidence in the record. Bocova v. Gonzales, 412 F.3d 257, 262 (1st Cir. 2005) (citing Da Silva v. Ashcroft, 394 F.3d 1, 4 (1st Cir. 2005)); see also INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992). Under that standard of review, we must uphold the BIA's fact-based determination of whether an alien is eligible for asylum "unless any reasonable adjudicator would be compelled to conclude to the contrary." Bocova, 412 F.3d at 262 (quoting 8 U.S.C. § 1252(b)(4)(B)). We may remand, however, if the BIA's opinion fails to "state with sufficient particularity and clarity the reasons for denial of asylum." Gailius v. INS, 147 F.3d 34, 46 (1st Cir. 1998) (internal quotation marks omitted). This is because we apply to the BIA "normal principles of administrative law governing the role of courts of appeals when reviewing agency decisions for substantial evidence," Cordero-Trejo v. INS, 40 F.3d 482, 487 (1st Cir. 1994), and under those principles, "a reviewing court . . . must judge the propriety of [administrative] action solely by the grounds invoked by the agency," and "that basis must be set forth

with such clarity as to be understandable." Gailius, 147 F.3d at 44 (quoting SEC v. Chenery Corp., 332 U.S. 194, 196 (1947)) (omission and alteration in Gailius).

In this case, assuming Halo's testimony to be true, he was an active member of the Democratic Party and worked at the right hand of his uncle, a leading member of, and significant source of funding for, the party. He was hauled in three times by the Albanian police after the rival Socialists took power, at least once because of his and/or his uncle's political affiliations and another time as part of an effort to force his uncle to switch party loyalties. He was beaten and denied food while in custody. Most importantly, if Halo's testimony is truthful, (1) government officials threatened to kill his uncle to pressure him to change his party affiliation and join the Socialists, (2) those same government officials also threatened to kill Halo if his uncle did not acquiesce, (3) Halo was known to be his uncle's right-hand man and a Democratic supporter, (4) Halo's uncle was eventually assassinated for his political activity and refusal to join the Socialists, and (5) Halo fears that if he were to return to Albania, he would be killed for the same reasons.

It is not clear to us why this does not establish past persecution, or even reasonable fear of future persecution, on account of Halo's political opinion and his and his family's affiliation with the Democratic party. The BIA may well have had

valid reasons for its conclusion, see Topalli v. Gonzales, No. 04-2514, 2005 U.S. App. LEXIS 15825, at *11-12 (1st Cir. Aug. 2, 2005) (distinguishing "isolated incidents" of maltreatment from "systematic maltreatment rising to the level of persecution"), but if so those reasons have not been articulated "with sufficient particularity and clarity." Gailius, 147 F.3d at 46.[2]

Second, if Halo had demonstrated past persecution based on political opinion, then the burden would shift to the government: the BIA could still find Halo ineligible for asylum, but only if the government established that "[t]here has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality," or that "[t]he applicant could avoid future persecution by relocating to another part of the applicant's country." El Moraghy v. Ashcroft, 331 F.3d 195, 203 (1st Cir. 2003) (quoting 8 C.F.R. §§ 1208.13(b)(1)(i)(A)-(B)) (alterations in original). Here the BIA stated that Halo would not face a reasonable possibility of persecution if returned to Albania, but its statement was conclusory; it offered no explanation of why this was so and did not account for the presumption arising from past persecution. As such, we cannot rely on that ground for an

---

[2] The BIA here chose not to use its adoption and affirmance procedure, under which it indicates that its "conclusions upon review of the record coincide with those which the immigration judge articulated in his or her decision." Matter of Burbano, 20 I. & N. Dec. 872, 874 (BIA 1994).

affirmance.  Under these circumstances we think the best outcome is to remand to the agency.[3]

Of course, this would be a different (and, from the government's standpoint, much easier) case if the IJ's adverse credibility determination were to be given effect.  The BIA, however, chose not to review that determination, but, rather, to assume arguendo Halo's credibility.  On remand, the BIA is free, if it so elects, to reevaluate that decision and pass upon the IJ's adverse credibility determination.

### III.

The order of the BIA is **vacated**, and the case is **remanded** to the BIA for further proceedings consistent with this opinion.

---

[3]  Because of our disposition, we need not address the BIA's decision denying withholding of removal or CAT relief.