# United States Court of Appeals
## For the First Circuit

No. 04-2734

ADNAN SULAIMAN,

Petitioner,

v.

ALBERTO GONZALES, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, Chief Judge,
Stahl, Senior Circuit Judge,
and Lynch, Circuit Judge.

Edward J. Bailey on brief for petitioner.
Jimmy Rodriguez, Trial Attorney, United States Department of
Justice, Environment and Natural Resources Division, Peter D.
Keisler, Assistant Attorney General, Civil Division, and Linda S.
Wernery, Assistant Director, Office of Immigration Litigation, on
brief for respondent.

November 21, 2005

**STAHL**, <u>**Senior Circuit Judge**</u>.  This appeal involves a Kurdish Syrian who came to the United States 17 years ago and has been living here illegally ever since.  Notwithstanding his long residence in the United States, the Department of Homeland Security is endeavoring to remove him to Syria.  Finding no error by the Board of Immigration Appeals in rejecting his claim for relief from removal, we deny his petition for review.

## I. Background

The IJ who heard Adnan Sulaiman's case found his testimony to be credible.  We therefore take his assertions before the IJ as true in setting forth the facts of the case.

Sulaiman is a 57-year-old Syrian citizen of Kurdish descent.  While he was growing up and throughout his adult life in Syria, he suffered discrimination at the hands of the ruling Ba'ath Party, which suppresses Kurdish nationalism among Syrian Kurds.  The Ba'athists denied Sulaiman the opportunity to get a public education and, to some degree, frustrated his efforts to find employment.  Sulaiman did obtain a privately financed education, and went on to find work for a Syrian company.  While at that job he was harassed by government security forces who attempted to coerce him into hiring Ba'ath party members to positions in the company, and who tried to extract benefits -- use of company cars, free gasoline, and the like -- by threatening Sulaiman with harm if he did not comply.  At some point in 1987, he was detained and

-2-

harassed for a full day by government security forces, which the IJ acknowledged must have been a "fearful experience" for him. After he was released from that detention he experienced increased harassment from security forces. He received this treatment because of his Kurdish origin and his membership in the Kurdish Democratic Party, a separatist organization disfavored by the Syrian government because it advocates independence for Syrian Kurds.

As a result of the harassment, Sulaiman decided to leave Syria. He obtained a tourist visa from the U.S. embassy in Syria and in June 1988 came to the United States. His visa soon expired, but Sulaiman stayed on. Many years later, he was located by what was then the Immigration and Naturalization Service (INS) during a round-up of potentially removable aliens that the INS conducted in the days following the attacks of September 11, 2001. The INS, now the Department of Homeland Security (DHS), began removal proceedings. Sulaiman requested withholding of removal and relief under the Convention Against Torture (CAT).

The Immigration Judge (IJ) who heard his case noted that Sulaiman would not be eligible for asylum because, with few exceptions, an application for asylum is barred if not filed within one year of a petitioner's arrival in the United States, and Sulaiman did not allege that his case met any of the exceptions. The IJ therefore concluded that the only issue facing it was

whether Sulaiman had demonstrated a "clear probability" that he would suffer from either persecution (meriting withholding of removal) or torture (meriting relief under the CAT) if he returned to Syria. While expressing sympathy for the petitioner, given the length of time he had resided in the United States, the IJ found that the requirements for relief had not been met. Sulaiman, the IJ noted, suffered no physical harm at the hands of government security forces while in Syria, and his stories of harassment were not sufficient to demonstrate that it was more likely than not that he would suffer persecution or torture upon his return. The IJ granted voluntary departure.

Sulaiman timely appealed to the Board of Immigration Appeals, which adopted the opinion of the IJ and affirmed her decision. Sulaiman now appeals the decision of the Board.

## II. Analysis

Sulaiman raises a number of issues in his petition. He contends that the IJ should have made a finding as to whether Sulaiman experienced past persecution, should have admitted and considered certain evidence, should have applied a different legal standard, and in any event reached the wrong conclusion on the facts presented. We review each claim in turn, finding no error. We note at the outset that, while we normally review the decisions of the Board, not of the IJ, the Board here adopted the opinion of the IJ. We therefore review the opinion of the IJ as if it were

that of Board.  Njenga v. Ashcroft, 386 F.3d 335, 338 (1st Cir. 2004).

**A.        Sufficiency of the IJ's Opinion**

Sulaiman faults the IJ for failing to make specific findings as to whether or not he suffered from past persecution. He also complains that the IJ did not thoroughly consider the State Department country report for Syria.  These claims go to the sufficiency of the IJ's opinion to support meaningful review, rather than to the procedures the IJ employed at the hearing or to the merits of the decision.  On a challenge to the sufficiency of an opinion, the usual remedy is remand, which we will order "if the BIA's opinion fails to state with sufficient particularity and clarity the reasons" for denying relief.  Xu v. Gonzales, 424 F.3d 45, 49 (1st Cir. 2005) (quoting Halo v. Gonzales, 419 F.3d 15, 18 (1st Cir. 2005)).

Sulaiman cites El Moraghy v. Ashcroft, 331 F.3d 195, 203 (1st Cir. 2003), in support of his argument that the IJ should have made a specific finding as to whether he suffered from past persecution.  El Moraghy indicates that a finding with respect to past persecution may be necessary under some circumstances.  It did not by any means create a per se rule requiring an explicit holding as to every factor that an IJ might find relevant in making a determination.  This is because, "[w]hen considering whether the clarity of an administrative decision is sufficient to support our

review, . . . we are not . . . oblivious of the record on which it is based." Xu, 424 F.3d at 49. An IJ is obligated to offer more explanation when the record suggests strong arguments for the petitioner that the IJ has not considered, see, e.g., Halo, 419 F.3d 15; Gailius v. INS, 147 F.3d 34 (1st Cir. 1998), but that is not the case here.

The IJ, it is true, did not use the phrase "past persecution." It is nevertheless evident from her opinion that she found no indication that Sulaiman's experiences in Syria amounted to persecution under the withholding of removal statute. The IJ's opinion indicates with clarity that she considered Sulaiman's testimony as to his experiences in Syria and concluded that they did not justify a finding that it was more likely than not that he would be persecuted if he returned to Syria. We do not require an IJ to intone any magic words before we will review her determination. See Morales v. INS, 208 F.3d 323, 328 (1st Cir. 2000).

Sulaiman also claims that the IJ did not sufficiently consider the Department of State country report that Sulaiman submitted into evidence, but this claim also fails for similar reasons. The IJ asserted, though in a bare fashion, that she had considered the country report: "The Court," she said, "has considered the Department of State reports put in by the Government." Although that is the only mention of the report in

the opinion, it is enough to satisfy a reviewing court that the IJ did in fact consider it. Had the contents of the report rendered the IJ's opinion sufficiently unclear by casting doubt on the reasoning of her decision, we would remand for clarification. But nothing in the State Department report suggests that Sulaiman would be more likely than not to be persecuted or tortured if he returned to Syria, and we therefore require no more detailed explanation from the IJ than she offered.

**B.        Exclusion of Evidence**

Sulaiman offered certain documents into evidence one day late, and the court chose not to admit the evidence. We review procedural decisions at the hearing level for abuse of discretion, Galicia v. Ashcroft, 396 F.3d 446, 447-48 (1st Cir. 2005), and we find no such abuse here.[1] The documents were untimely submitted. What is more, the IJ examined the proffered material, and noted that none of it was probative of Sulaiman's claim. That being the case, she found there was no good reason to make an exception to the filing deadline in Sulaiman's case. Her considered procedural decision was not an abuse of discretion.

---

[1]The government contends that Sulaiman waived the argument that the IJ abused her discretion with respect to the late evidence because he did not raise it before the Board. We see no need to decide whether there was waiver, however, because the argument is clearly meritless.

## C.  Applicable Legal Standard

Sulaiman contends that the IJ applied the wrong standard in reviewing his claim under the CAT, because the IJ said that, in order to grant relief, she needed to find a "clear probability" that he would be tortured if he returned to Syria.  This, however, is the correct standard. "Clear probability" simply means "more likely than not," which is the correct standard for the IJ to apply to the relevant claims.  See INS v. Stevic, 467 U.S. 407, 429-30 (1984).  Sulaiman's contention is meritless.

## D.  The Merits

We review the determinations of the Board or an IJ under a deferential standard, which permits us to reverse "only if the petitioner's evidence would compel a reasonable factfinder to conclude that relief was warranted."  Xu, 424 F.3d at 48 (quoting Settenda v. Ashcroft, 377 F.3d 89, 93 (1st Cir. 2004)).

A petitioner's burden of proof for withholding of removal and relief under the CAT is high: the petitioner has to show that it is more likely than not that he will be persecuted or tortured in his country of origin.  Sulaiman's account of his life in Syria, which the IJ did deem credible, is an account of significant harassment, but the IJ could reasonably have concluded that the events he recounted did not rise to the level of persecution required by the withholding of removal statute, and there is no indication of specific threats against him that would give rise to

-8-

an inference that he would probably suffer persecution or torture if he returned to Syria.  Because the IJ did not act unreasonably in finding that Sulaiman had not met his burden of proof, we affirm her decision.

### III. Conclusion

For the foregoing reasons, we **<u>deny</u>** Sulaiman's petition for review and **<u>affirm</u>** the decision of the Board.

_____