# UNITED STATES COURT OF APPEALS

# FOR THE TENTH CIRCUIT

SYRANOOSH BAGDASSARYAN,

Petitioner,

v.

ALBERTO R. GONZALES,
Attorney General,

Respondent.

No. 05-9557
(No. A96-104-386)
(Petition for Review)

## ORDER
Filed June 13, 2006

Before **LUCERO**, **EBEL**, and **MURPHY**, Circuit Judges.

The motion to amend the Order and Judgment filed May 19, 2006, is granted in part. The reference to the Department of Homeland Security on page 8 will be deleted. An amended copy of the Order and Judgment, filed nunc pro tunc to May 19, 2006, is attached.

Entered for the Court
Elisabeth A. Shumaker, Clerk

By:
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**May 19, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

SYRANOOSH BAGDASSARYAN,

      Petitioner,

v.

ALBERTO R. GONZALES,
Attorney General,

      Respondent.

No. 05-9557
(No. A96-104-386)
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **EBEL**, and **MURPHY**, Circuit Judges.

---

      Petitioner seeks review of a final order of removal denying her application

for asylum from Azerbaijan, restriction on removal to Azerbaijan or Armenia,[1]

and relief under the Convention Against Torture. The Immigration Judge (IJ)

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1]     Petitioner refers to this relief as "withholding of removal," its designation prior to the Illegal Reform and Immigrant Responsibility Act of 1996, but we use the current terminology here. *See generally Elzour v. Ashcroft*, 378 F.3d 1143, 1149 (10th Cir. 2004).

denied relief in an oral decision affirmed by the Board of Immigration Appeals (BIA) in a single-member opinion adopting the IJ's rationale with some additional reasoning. The BIA's opinion is thus the final order of removal for purposes of our review, though we look to the IJ's decision for its fuller explanation of the grounds of decision adopted by the BIA. *See Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). We review all legal determinations de novo and all factual determinations for substantial evidence.[2] *See Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005). For reasons explained below, we reverse the BIA's denial of asylum and remand for further proceedings.

Petitioner is a citizen of Azerbaijan, where she was born in 1959 to ethnic Armenian parents. At age fifteen, she moved to Armenia to seek educational opportunities denied her in Azerbaijan. She eventually married an Armenian citizen, secured employment, and had three children. Given longstanding regional prejudices, however, her Azerbaijani nationality and background still provoked some hostility toward herself and her family.

---

[2] We note that provisions of the REAL ID Act of 2005 altered burden of proof, credibility, and review standards in cases involving asylum and other relief from removal, but these provisions do not apply here because petitioner filed her application years before May 11, 2005, the effective date of the Act. *See Yan v. Gonzales*, 438 F.3d 1249, 1251 n.3 (10th Cir. 2006); *Ivanishvili v. U.S. Dep't of Justice*, 433 F.3d 332, 339 (2d Cir. 2006); *Singh v. Gonzales*, 413 F.3d 156, 158-59 (1st Cir. 2005).

Petitioner's parents became ill and, in 1986, she moved her family to Azerbaijan to care for them. In 1988, hostility toward ethnic Armenians in Azerbaijan was inflamed by armed conflict over Nagorno-Karabakh, an Azerbaijani province populated largely by Armenians. *See Rife v. Ashcroft*, 374 F.3d 606, 609 (8th Cir. 2004); *Andriasian v. INS*, 180 F.3d 1033, 1036-37 (9th Cir. 1999). The State Department "estimates that pogroms and other tensions caused hundreds of thousands of ethnic Armenians to flee Azerbaijan and ethnic Azeris to flee Armenia. Thousands have died in the ensuing military conflict and accompanying violence." *Andriasain*, 180 F.3d at 1036 n.2. Nearly all ethnic Armenians were driven from Azerbaijan. Violence against Armenians has been noted, including by the BIA itself, specifically in connection with pogroms in January of 1990. *See Avetova-Elisseva v. INS*, 213 F.3d 1192, 1196 n.6 (9th Cir. 2000); *see also Andriasian*, 180 F.3d at 1037. Against this backdrop, petitioner has consistently maintained, with inherent historical plausibility, that Azerbaijanis came through her village in January 1990, killed her parents and her brother, destroyed their home, and forced her to flee with her family back to Armenia. *See* R. 165 (May 22, 2003 affidavit), 348 (Sept. 29, 2002 Asylum Application); *see also id.* at 66, 71-72 (Nov. 18, 2003 hearing testimony).

This compelling factual basis for past persecution was discounted by the IJ – with the BIA summarily adopting his analysis – because of the IJ's confusion about the timing of the relevant events. The IJ mistakenly thought petitioner was

claiming that her parents and brother were killed and their house was destroyed

only shortly after she returned to Azerbaijan in 1986, and, based on that

misunderstanding, did not find it credible that petitioner would have stayed

another four years before leaving in 1990:

> [S]he says she went back in 1986 for purposes of taking care of her
> mother and father who were becoming ill.  Yet she indicates that they
> were killed by the locals because of war tension at that particular
> time.  But she was there from 1986 to 1990.  Her mother was killed,
> her father was killed, her brother was killed.  Why would they remain
> in the country when her . . . husband . . . and her kids . . . were
> Armenian.
>
> . . . .
>
> . . . [W]hy after four years you would move because you are
> fearful of your life and that of your husband's and your child when in
> 1986, when you first get there, the tension is high, your mother is
> killed, your father is killed, your brother is killed, the house is
> burned down.  It makes no sense to this particular Judge at all.

*Id*. at 54-55.[3]

Because of the significant role past persecution plays in the analysis, this

mistake critically undermines the disposition of petitioner's application.  Past

---

[3]      The IJ also generically discredited petitioner's testimony as "not responsive
[nor] sufficiently detailed, consistent, or believable to provide a plausible and
coherent account of the basis for her fears."  R. at 53.  If this statement was
intended to supplement (rather than just restate in broader terms) the erroneous
particularized rationale given for rejecting petitioner's account of events in 1990,
such boilerplate cannot satisfy the requirement that "specific, cogent reasons" be
given for adverse credibility determinations.  *Wiransane v. Ashcroft*, 366 F.3d
889, 897 (10th Cir. 2004) (quotation omitted).  None of the catch-all criticisms
strung together in the IJ's conclusory statement apply to petitioner's account of
past persecution in Azerbaijan.

persecution may support relief in two distinct ways, by (1) raising a presumption of a well-founded fear of persecution sufficient to warrant relief unless rebutted by the government,[4] or (2) directly supporting relief, in the absence of any fear of future persecution, provided the alien demonstrates (a) compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution or (b) a reasonable probability that he or she may suffer other serious harm upon removal to that country. *See Niang*, 422 F.3d at 1195. Thus, when the BIA's analysis fails to account for past persecution, the case must be reversed and remanded for further administrative proceedings. *See, e.g.*, *Halo v. Gonzales*, 419 F.3d 15, 19 (1st Cir. 2005); *Begzatowski v. INS*, 278 F.3d 665, 671-72 (7th Cir. 2002); *Shoafera v. INS*, 228 F.3d 1070, 1076 (9th Cir. 2000).

We recognize that the BIA cited three additional points to bolster the IJ's removal decision, but none of these stands up to scrutiny. First, the BIA claimed petitioner had admitted that the mistreatment she had encountered "constituted at most discrimination and resentment [and] does not rise to the level of past persecution." R. at 3. This point could mean two different things, one plainly false and the other irrelevant to the issue of past persecution here. If the BIA meant petitioner had conceded that the murder of her parents and brother and the

---

[4]    We note that "[j]ust as an applicant can be granted refugee status [for purposes of asylum] on the basis of past persecution, an applicant can establish a presumptive entitlement to restriction on removal on the same basis." *Niang*, 422 F.3d at 1195.

destruction of their home was mere discrimination, she never remotely made such a concession, which indeed would have been absurd. On the other hand, if the BIA meant petitioner had conceded that other mistreatment she had suffered did not rise to the level of persecution, the point is still doubtful (the testimony cited by the BIA related only to hostility associated with her church attendance) but, in any event, it would not undercut the past persecution noted above.

The BIA also reasoned that "the fact that [petitioner], at various times, returned alternately to Azerbaijan, Armenia, and Russia indicates her fear in any of those countries was not well-founded." *Id.* This point is simply inapposite to the persecution petitioner suffered in 1990, after which *she never returned to Azerbaijan*.

Finally, the BIA noted that recent country reports for Azerbaijan, Armenia, and Russia "reflect that, while on the basis of her ethnicity [petitioner] may face some level of discrimination or harassment, it does not rise to a level of a well-founded fear." *Id.* This point does not in any way undercut petitioner's showing of past persecution during the anti-Armenian pogroms in Azerbaijan in 1990.[5] Given that showing, she is entitled to a presumption of future persecution

---

[5] Moreover, we note that it is only "[w]ith the *nearly complete departure of the Armenian population* [that] the number of problems reported by this ethnic minority [in Azerbaijan] has decreased." U.S. Department of State Azerbaijan Country Report on Human Rights Practices for 1996, at 11 (emphasis added), http://www.state.gov/www/global/human_rights/1996_hrp_report/azerbaij.html.

that controls unless overcome by a specific administrative finding that there has been "a fundamental change in circumstances such that [she] no longer has a well-founded fear of persecution" or that she "could avoid future persecution by relocating to another part of [Azerbaijan]." 8 C.F.R. § 1208.13(b)(1)(i)(A), (B). The BIA, which failed even to recognize the past persecution here, never made either of these findings, and it is beyond our role to attempt to supply them on judicial review.[6] *See Mickeviciute v. INS*, 327 F.3d 1159, 1164-65 (10th Cir. 2003) (following *INS v. Ventura*, 537 U.S. 12 (2002), and *SEC v. Chenery Corp.*, 332 U.S. 194 (1947)).

There is one last matter to clarify. After the IJ stated his decision denying asylum from, and restriction on removal to, Azerbaijan, *see* R. at 44-57, counsel for the government asked the IJ to designate Armenia as an alternate removal destination "[j]ust in the event it may be beneficial in the future," *id.* at 136. The IJ agreed with no further explanation. *Id.* Petitioner objects that the timing and manner of this ruling violated her due process rights. This objection is moot.

---

[6] The references to conditions in Armenia and Russia also suggest a possible denial of asylum on the basis of firm resettlement in either country. *See generally Elzour*, 378 F.3d at 1149 ("[A]sylum is not available if the alien was firmly resettled in another country prior to arriving in the United States."). Of course, that would not affect petitioner's entitlement to a restriction on removal to Azerbaijan. *Id.* ("[F]irm resettlement in a third country is not a bar to restriction on removal to the country where persecution is likely.") In any event, no finding of firm resettlement was made and we do not express any opinion on the matter.

Once it is determined that an alien is not entitled to asylum and, thus, is subject to removal, the IJ may choose among a number of possible destination countries under 8 U.S.C. § 1231, subject of course to any restrictions on removal imposed under § 1231(b)(3). *See generally Jama v. Immigration & Customs Enforcement*, 543 U.S. 335, 337-41 (2005); *El Himri v. Ashcroft*, 378 F.3d 932, 938-39 (9th Cir. 2004). Here, however, we reverse the decision denying asylum and remand the matter for further proceedings. Unlike restriction on removal, which merely limits where a removable alien may be sent, asylum involves the right to remain in the United States, precluding removal altogether. *Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1234 (10th Cir. 2003). Thus, if on remand petitioner secures asylum from Azerbaijan, any question about other countries to which she could have been removed would be irrelevant. *See, e.g.*, *Andriasian*, 180 F.3d at 1042 n.14 ("If a petitioner is granted asylum, then the persecution that he would face if returned to a designated country of deportation is no longer relevant–because he may not be deported to that country or to any other."). If on remand petitioner is denied asylum, she will presumably have another opportunity to oppose her removal to any particular country.[7]

---

[7]    If petitioner is denied asylum but granted relief from removal to Azerbaijan, the latter relief would "not confer protection from removal to any other country" permitted under § 1231. *El Himri*, 378 F.3d at 937-38.

The petition for review is GRANTED, the order of removal is REVERSED, and the matter is REMANDED for further proceedings consistent with this order and judgment.

Entered for the Court


Michael R. Murphy
Circuit Judge