**Not for Publication in West's Federal Reporter**

# United States Court of Appeals

## For the First Circuit

No. 06-2587

CHERIF BOUKHTOUCHEN,

Petitioner,

v.

ALBERTO GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Howard, Circuit Judge.

Kevin P. Martin and Goodwin Procter LLP on brief for petitioner.

John P. Devaney, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Peter D. Keisler, Assistant Attorney General, Civil Division, and Carol Federighi, Senior Litigation Counsel, on brief for respondent.

August 10, 2007

**PER CURIAM.** Cherif Boukhtouchen petitions for review of a decision of the Board of Immigration Appeals ("BIA") affirming an order of removal against him. We deny the petition.

We recount the facts as presented in petitioner's oral testimony and in the documentation he submitted in support of his application for asylum. Petitioner is a citizen of Algeria and a member of that country's Berber minority. In his application for asylum[1] and withholding of removal, petitioner described several events in the 1960s, '70s, and '80s, during the period of military rule in Algeria, when he faced harassment, such as being briefly arrested following a political demonstration, police yelling at him for speaking in the Kabylian language of the Berber minority, and once having his car shot at by unknown assailants.

In the late 1980s, petitioner worked toward achieving some autonomy for the Berber regions of Algeria. He wrote and distributed a pamphlet arguing for federalism, and attempted, unsuccessfully, to start a political party with the goal of implementing federalism, multiparty democracy, and minority rights. By 1993, petitioner felt that the government was beginning to crack

---

[1]The Immigration Judge denied petitioner's application for asylum because he had not sought asylum within one year of arriving in the United States nor established that an exception to that deadline applied. See 8 U.S.C. § 1158(a)(2)(B) & (D). The BIA affirmed that decision. Petitioner does not seek review of that decision, nor the decision to deny him protection under the Convention Against Torture. He petitions for review only of the decision to deny him withholding of removal.

down on opposition.  Although the government did not confront him, he feared that his ethnic and political background, his writings, and his frequent trips abroad would make him a target for government pressure, and he left the country.  From 1993 to 1999 he lived in Niger and Benin, with a brief return to Algeria in 1998.

In 1999, petitioner came to the United States and overstayed his visa.  On or about January 10, 2003, the Immigration and Naturalization Service ("INS")[2] filed a Notice to Appear, and on September 4, 2003, petitioner filed his application for asylum and withholding of removal.  On March 22, 2005, an Immigration Judge denied his application, a decision that was affirmed by the BIA on October 16, 2006.

We review the decision of the BIA as the final agency order.  Mukamusoni v. Ashcroft, 390 F.3d 110, 199 (1st Cir. 2004); Georcely v. Ashcroft, 375 F.3d 45, 49 (1st Cir. 2004) ("When the BIA issues its own opinion, we review the Board's decision and not the immigration judge's.").  We review the factual determinations of the BIA under the deferential "substantial evidence" standard.  Orelien v. Gonzales, 467 F.3d 67, 70 (1st Cir. 2006).  Under this standard, we will uphold a decision of the BIA if "'supported by reasonable, substantial, and probative evidence on the record

---

[2]On March 1, 2003, the functions of the INS were transferred to the Department of Homeland Security.  Homeland Security Act of 2002, Pub. L. No. 107-296, § 471(a), 116 Stat. 2135, 2205 (codified at 6 U.S.C. § 291(a)).

considered as a whole.'" INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (quoting 8 U.S.C. § 1105a(a)(4) (1988)). "This means that the BIA's determination must stand unless 'any reasonable adjudicator would be compelled to conclude to the contrary.'" Rodriguez-Ramirez v. Ashcroft, 398 F.3d 120, 124 (1st Cir. 2005) (quoting 8 U.S.C. § 1252(b)(4)(B)).

To qualify for withholding of removal, the petitioner must show that his "life or freedom would be threatened in [the removal] country because of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). "As a general rule, withholding is mandatory if an alien 'establish[es] that it is more likely than not that [he] would be subject to persecution on one of the specified grounds.'" INS v. Aguirre-Aguirre, 526 U.S. 415, 419 (1999) (quoting INS v. Stevic, 467 U.S. 407, 429-30 (1984)); accord Albathani v. INS, 318 F.3d 365, 372-73 (1st Cir. 2003) (applying "more likely than not" standard). This is a tougher standard than that for asylum, which requires only a "well-founded fear of persecution." 8 U.S.C. § 1101(a)(42)(A); see Aguilar-Solis v. INS, 168 F.3d 565, 569 n.3 (1st Cir. 1999) (contrasting "well-founded fear of persecution" with "clear probability of persecution").

"If the applicant is determined to have suffered past persecution in the proposed country of removal [based on one of the protected grounds] it shall be presumed that the applicant's life

-4-

or freedom would be threatened in the future in the country of removal on the basis of the original claim." 8 C.F.R. § 1208.16(b)(1)(i). "To qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering." Nelson v. INS, 232 F.3d 258, 263 (1st Cir. 2000).

The BIA found that petitioner had not presented evidence sufficient to show past persecution. The few events of harassment, the BIA found, did not rise to the level of persecution, and neither the petitioner nor his family members had ever been targeted by the Algerian government. As the petitioner states in his application for asylum, "I never personally experienced significant harm or mistreatment. I did experience some forms of threats that were generalized and regarded as ordinary in Algeria at the time when they occurred." In his petition for review, the petitioner does not give an argument, nor do we see one, against the BIA's conclusion that he did not suffer past persecution, and thus we turn to the issue of future persecution. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Having failed to establish past persecution, petitioner is not entitled to a presumption of future persecution. Palma-Mazariegos v. Gonzales, 428 F.3d 30, 35 (1st Cir. 2005). He bears the burden of proving that it is more likely than not that he will be persecuted based on a statutorily protected ground if he is

deported to Algeria.  Chahid Hayek v. Gonzales, 445 F.3d 501, 508 (1st Cir. 2006).

The petitioner's claim, essentially, is that as a politically active member of the Berber minority, he is likely to face persecution if he returns to Algeria.  He points to evidence of mistreatment of Berbers, including violence and death following protests and riots by members of the Berber minority, and the detention and beating of a prominent Berber activist, Belaid Abrika.  The BIA found that this was not sufficient to show persecution, because the petitioner was not able to show that he would be specifically targeted by the Algerian government, and because he was not affiliated with Abrika other than through their shared ethnicity.  The BIA further noted that the petitioner was unable to support his claim with evidence of persecution of family members in Algeria.[3]

Petitioner's argument in his petition for review is not so much that substantial evidence compels an alternative result,

---

[3]Petitioner argues that it was inappropriate to look to the treatment of his family members in determining the likelihood of petitioner being persecuted if he returns to Algeria, because his situation is not identical to theirs.  This is mistaken; relatives' situations in the home country, while not conclusive, are certainly relevant.  See Aguilar-Solis, 168 F.3d at 573 ("Without some explanation, the fact that close relatives continue to live peacefully in the alien's homeland undercuts the alien's claim that persecution awaits his return"); In re A-E-—, 21 I. & N. Dec. 1157, 1160 (BIA 1998) (en banc) (holding that the reasonableness of an alien's fear of persecution is reduced when his family remains in his native country unharmed for a long period of time after his departure).

but rather that the BIA did not sufficiently consider all the evidence or sufficiently explain its conclusion.[4] To support his argument, petitioner looks to the case of Halo v. Gonzales, 419 F.3d 15 (1st Cir. 2005), in which we stated that "[w]e may remand . . . if the BIA's opinion fails to 'state with sufficient particularity and clarity the reasons'" for its conclusion. Id. at 18 (quoting Gailius v. INS, 147 F.3d 34, 46 (1st Cir. 1998)). However, as Halo and Gailius make clear, our concern is with situations where the BIA has made a perfunctory decision to deny relief in cases where the administrative record could support the opposite conclusion. Halo, 419 F.3d at 19 (stating that the evidence presented a strong argument for persecution, and the BIA did not give its reasons for concluding the opposite); Gailius, 147 F.3d at 46 (stating that "the documentary evidence alone, if genuine, could well cause us to question the conclusion that there is no well-founded fear of persecution"); accord Xu v. Gonzales, 424 F.3d 45, 46 (1st Cir. 2005) ("We held in Halo that, where the administrative record of a case could easily be thought to compel a conclusion contrary to the one reached by the BIA, it is

_____

[4]Petitioner also argues that the BIA "applied an incorrect legal standard" when it noted that there is no evidence that petitioner is currently being targeted by the Algerian government. This is without merit. Whether or not a person is currently being targeted by a government is certainly relevant to the question of whether he is likely to be persecuted in the future, and the BIA was entitled to rely on that evidence. See, e.g., Chahid Hayek, 445 F.3d at 508.

incumbent on the agency to give some reasoned explanation for the conclusion it reached."); Sulaiman v. Gonzales, 429 F.3d 347, 350 (1st Cir. 2005) (holding that the agency "is obligated to offer more explanation when the record suggests strong arguments for the petitioner that [the agency] has not considered") (citing Halo, 419 F.3d at 15, and Gailius, 147 F.3d at 34).

Here, the BIA addressed petitioner's main arguments: his previous detentions by the government; his membership in the Berber minority; his political activism; and the arrest and detention of a prominent Berber activist.[5] The BIA also stated that it reviewed the documentary evidence, which included reports on human rights in Algeria from the U.S. Department of State and other governments, and found that they did not support a claim of future persecution. Given that the record does not "suggest[] strong arguments for the petitioner," id., the BIA's treatment of his arguments was sufficient. Furthermore, we are not compelled, on this record, to conclude that it is more likely than not that petitioner will be persecuted if he returns to Algeria.

The petition for review is denied.

---

[5]Petitioner argues that the BIA "inappropriately provided no weight" to the evidence of Abrika's treatment. This is also without merit. The BIA considered the evidence and determined that, because petitioner was not affiliated with Abrika's party and did not approach Abrika's prominence, Abrika's treatment did not support petitioner's claim that he would be treated in a similar manner. We see no error in this.