# United States Court of Appeals
## For the First Circuit

No. 05-1870

AMBESSA HAGOS BERHE,

Petitioner,

v.

ALBERTO R. GONZALES, United States Attorney General,

Respondent.

No. 05-2239

HERMAN HENRY,

Petitioner,

v.

ALBERTO R. GONZALES, United States Attorney General,

Respondent.

ON PETITIONS FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Selya, Lipez, and Howard, <u>Circuit Judges</u>.

<u>William W. Fick</u>, with whom <u>Foley Hoag LLP</u> was on brief, for
petitioner Berhe.
<u>Jeremiah Friedman</u>, with whom <u>Ilana Greenstein</u>, <u>Harvey Kaplan</u>,
<u>Maureen O'Sullivan</u> and <u>Kaplan, O'Sullivan & Friedman, LLP</u>, were on
brief, for petitioner Henry.

William E. Graves, Jr. and Graves & Doyle, on brief for Committee for Public Counsel Services, National Immigration Project of the National Lawyers Guild and Immigrant Defense Project of the New York State Defenders Association, amici curiae in support of petitioner in No. 05-2239.

John J. Andre, Senior Litigation Counsel, United States Department of Justice, Office of Immigration Litigation, with whom Peter D. Keisler, Assistant Attorney General, Civil Division, Michael P. Lindeman, Assistant Director, and Ethan B. Kanter, Senior Litigation Counsel, Office of Immigration Litigation, were on brief in No. 05-1870, and with whom Peter D. Keisler, Assistant Attorney General, Civil Division, Linda S. Wernery, Assistant Director and William Minick, Attorney, Office of Immigration Litigation, were on brief in No. 05-2239, for respondent.

---

September 26, 2006

---

**HOWARD, Circuit Judge**.  Herman Henry and Ambessa Hagos Berhe[1] each petition for review of Board of Immigration Appeals' decisions ordering their removal.  We have written a single opinion dealing with those separate petitions because they both question whether a state misdemeanor drug offense can constitute an "aggravated felony" for the purposes of the Immigration and Nationality Act (INA).  See 8 U.S.C. § 1101(a)(43).  Petitioners face removal from the United States on the basis of their respective state misdemeanor convictions for possession of a controlled substance.  The Board denied their applications for discretionary relief from removal on account of their aggravated felony convictions.  The petitioners argue, inter alia, that their respective state convictions should not be considered "aggravated felonies" because Massachusetts, the convicting authority in both cases, classified the crimes as misdemeanors.

We reject the petitioners' contentions that we may only look to state law in such cases and reaffirm that a state misdemeanor drug offense can amount to an "aggravated felony" if that offense would have been a felony had it been charged under the federal drug laws.  Because Henry's offense -- possession with intent to distribute -- would have been a felony had it been

---

[1] Although we have indicated this petitioner's name consistent with the administrative record, his brief states that his proper name is "Ambessa Berhe Hagos."  Whichever is correct, we shall refer to him in this opinion simply as "Berhe."

charged under federal law, we deny his petition. The record of Berhe's state conviction, however, reveals that he was convicted merely for simple possession, a misdemeanor under federal law. For that reason, among others, we vacate the Board's order and remand Berhe's case for further proceedings.

We begin our discussion by outlining the relevant procedural and factual background of the respective petitions.

**I.**

## A. Henry's petition

Henry is a Jamaican national who was admitted to the United States as a permanent resident in 1984. In 2001, he pleaded guilty in Massachusetts state court to possession of marijuana with intent to distribute in violation of Mass. Gen. Laws ch. 94C, § 32C(a), a misdemeanor under Massachusetts law. Two years later, Henry traveled abroad and was denied re-admission upon his return to the United States. The Department of Homeland Security (DHS) charged Henry with being removable because of his 2001 drug conviction. See INA § 212(a)(2)(A)(i)(II), 8 U.S.C. § 1182(a)(2)(A)(i)(II) (declaring inadmissible "any alien convicted of" violating a law "relating to a controlled substance"); INA § 212(a)(2)(C), 8 U.S.C. § 1182(a)(2)(C)(i) (declaring inadmissible any alien "the Attorney General knows or has reason to believe . . . is or has been an illicit trafficker in any controlled substance").

At a hearing before an immigration judge, Henry admitted the factual allegations charged by DHS and conceded removability on the ground that he had violated a law relating to controlled substances. He denied, however, that he was removable as an "illicit trafficker" in controlled substances. He also filed an application for cancellation of removal, arguing that his removal would result in exceptional hardship to his family living in the United States, who were all either citizens or lawful permanent residents. See INA § 240A(a), 8 U.S.C. § 1229b(a)(3). The immigration judge found Henry removable as charged. Although the judge deemed Henry eligible for cancellation of removal, she denied Henry's application as a matter of discretion. Both Henry and DHS appealed to the Board.

DHS challenged the immigration judge's legal conclusion that Henry was eligible for cancellation of removal. According to DHS, Henry was ineligible for such relief because he had been convicted of an "aggravated felony." See id. (providing the Attorney General with discretion to cancel the removal of any alien who "has not been convicted of any aggravated felony"); id. § 1101(a)(43)(B) (defining "aggravated felony").

The Board sustained DHS's appeal. It observed that, under this court's precedent, a state drug offense qualifies as an "aggravated felony" if it is punishable under one of the federal drug enforcement statutes, including the Controlled Substances Act

(CSA), and is a felony.  See Amaral v. INS, 977 F.2d 33, 35 (1st Cir. 1992).  The Board found that possession of marijuana with intent to distribute is punishable under the CSA by a maximum of five years' imprisonment, see 21 U.S.C. § 841(a)(1), (b)(1)(D), and would be classified as a felony under federal law, see 18 U.S.C. § 3559(a) (any offense punishable by more than one year in prison is a felony).  Because Henry's Massachusetts offense would have been punishable as a felony under federal law, the Board concluded that it was an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(B).  The Board therefore found Henry ineligible for cancellation of removal and ordered him removed to Jamaica.

## B.  Berhe's petition

Berhe was born in 1978 in a city in Ethopia, which is now a part of Eritrea.  His birth mother gave him up for adoption during the Ethiopian civil war and his adoptive parents thereafter took him to Sudan.  Four years later, in 1987, he and his adoptive parents were admitted to the United States as refugees.  In 1988, Berhe's status was adjusted to lawful permanent resident.  Since his admission to the United States, Berhe has never returned to Eritrea.  Nor has he had any contact with any surviving family members there.

In 1996, Berhe was convicted in a Massachusetts municipal court for simple possession of crack cocaine under Mass. Gen. Laws ch. 94C, § 34, and for assault and battery of a police officer, and

was sentenced to six months' probation.  In 2003, he pleaded guilty to simple possession of crack cocaine in Massachusetts state district court, and received a six-month suspended sentence.  In prosecuting the 2003 offense, the Commonwealth of Massachusetts did not charge Berhe with a prior conviction because it did not seek a recidivism-based sentence enhancement.  See Mass. Gen. Laws ch. 278, § 11A (providing that if the government seeks enhanced penalties because of a prior conviction, the defendant "shall be entitled to a trial by jury of the issue of conviction of a prior offense").  Both the 1996 conviction and the 2003 conviction were misdemeanors under Massachusetts law.  See Mass. Gen. Laws ch. 274, § 1 ("A crime punishable by death or imprisonment in the state prison is a felony.  All other crimes are misdemeanors.").

In 2004, DHS initiated removal proceedings against Berhe, charging that he was removable because of his 2003 conviction for simple possession of crack cocaine.  See INA § 237(a)(2)(B)(i), 8 U.S.C. § 1227(a)(2)(B)(i) (providing that any alien convicted of violating a law "relating to a controlled substance . . . is deportable").  Berhe conceded removability, but submitted applications seeking cancellation of removal, asylum, withholding of removal, and relief under the Convention Against Torture (CAT). Berhe's asylum application asserted that he would be persecuted on account of his religion were he returned to Eritrea.

-7-

DHS subsequently filed a supplemental charge of removability contending that Berhe's 2003 conviction was for an "aggravated felony," see id. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony . . . is deportable."). DHS argued that because Berhe had a prior drug conviction, his 2003 misdemeanor simple possession conviction was an "aggravated felony" under the INA. See id. § 1101(a)(43)(B). As a result, DHS argued, Berhe was statutorily ineligible for the discretionary relief of asylum or cancellation of removal. See id. §§ 1158(b)(2)(A)(ii), 1158(b)(2)(B)(i), 1229b(a)(3). DHS also argued that an aggravated felony is presumptively a "particularly serious crime," which rendered Berhe ineligible for withholding of removal. See id. § 1231(b)(3)(B)(ii).

Following a hearing, an immigration judge found Berhe removable on the basis of the original controlled substance charge, but not on the aggravated felony charge. The judge concluded that, because Berhe's 2003 conviction was classified by Massachusetts law as a misdemeanor, it could not be considered an aggravated felony. The judge therefore evaluated Berhe's claims for relief and granted him asylum, withholding of removal, and cancellation of removal, but denied relief under the CAT. DHS appealed to the Board and Berhe filed a cross-appeal from the denial of his CAT claim.

The Board sustained DHS's appeal. The Board stated that it would apply the First Circuit's approach for determining whether

the state conviction is an aggravated felony.  The Board found that Berhe's 2003 offense was punishable under federal law as a felony because his prior drug possession offense converted his subsequent possession conviction into a felony.  Because Berhe had been convicted of an aggravated felony, the Board found him ineligible for asylum or cancellation of removal and therefore did not reach the merits of those claims.  The Board also reversed the immigration judge's grant of withholding of removal on the ground that Berhe had not shown "a clear probability of persecution on account of any protected ground," and dismissed Berhe's cross-appeal as untimely.  The Board ordered Berhe removed to Eritrea.

## II.

Henry and Berhe separately challenge the Board's interpretation of "aggravated felony."  They contend that the Board erred by treating their state misdemeanor convictions as aggravated felonies under the INA.  Berhe additionally challenges the Board's merits-based determination overturning the immigration judge's decision granting him withholding of removal and contends that the Board's refusal to consider his CAT claim as untimely was erroneous as a matter of law.  We begin with their common challenge to the definition of "aggravated felony."

## A.  Aggravated Felony

Because this issue concerns the interpretation of statutory provisions, viz., 8 U.S.C. § 1101(a)(43) and 18 U.S.C. §

924(c)(2), our review is de novo. Enwonwu v. Gonazales, 438 F.3d 22, 34-35 & n.12 (1st Cir. 2006). Although we ordinarily accord deference to the Board's reasonable interpretation of a silent or ambiguous provision of the INA, and the Board's choice of methodology for resolving a given issue arising under the INA may be regarded as an interpretation, we do not accord such deference in an "aggravated felony" case because, as we describe below, see infra at 13, the BIA has taken a passive stance with regard to the interpretation of 8 U.S.C. § 1101(a)(43). Conteh v. Gonzales, No. 05-1282, --- F.3d ---, 2006 WL 2406942, at *4 n.3 (1st Cir. 2006).

The INA establishes a comprehensive list of offenses that qualify as aggravated felonies. See 8 U.S.C. § 1101(a)(43) (providing 21 subcategories of aggravated felony offenses, many of which cross-reference to other U.S. Code provisions). Included in this list is "illicit trafficking in a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18). . . . whether in violation of State or Federal law." Id. § 1101(a)(43)(B) (emphasis added). "Drug trafficking crime," in turn, means "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or the Maritime Drug Law Enforcement Act (46 U.S.C. App. 1901 et seq.)." 18 U.S.C. § 924(c)(2) (emphasis added).

The Board has interpreted § 1101(a)(43)(B) to provide two paths for arriving at an aggravated felony finding. The first route is based on the "illicit trafficking in a controlled substance" language, and is not relevant to these cases. See Gerbier v. Holmes, 280 F.3d 297, 313 (3d Cir. 2002) (noting that under the "illicit trafficking route" the state offense "must be a felony under the law of the convicting sovereign" and "must contain a trafficking element"). The second route is premised on the language "drug trafficking crime" as defined in 18 U.S.C. § 924(c)(2). The Board concluded in Matter of Davis, 20 I&N Dec. 536 (BIA 1992), that in terms of the "drug trafficking crime" route, any state drug offense, whether classified as a felony or misdemeanor in that state, is an aggravated felony if the same conduct would have been punishable as a felony if charged under one of the three federal statutes enumerated in § 924(c)(2). Id. at 543; see also Gerbier, 280 F.3d at 306. This methodology is sometimes referred to as the "hypothetical federal felony" approach. See Gerbier, 280 F.3d at 306.

The Board later clarified that the term "any felony" in § 924(c)(2) refers to the definition of felony in 18 U.S.C. § 3559(a), which provides catchall classifications for crimes codified in Title 18. In re L-G-, 21 I&N Dec. 89, 94 (BIA 1995); 18 U.S.C. § 3559(a) (classifying any offense that is not specifically classified in the substantive section defining the

-11-

offense).  Under that provision, a "felony" is any offense where the maximum term of imprisonment authorized is more than one year. 18 U.S.C. § 3559(a).  Thus, the Board ruled that a state drug offense could constitute an aggravated felony, in terms of the "drug trafficking crime" route, only if it is punishable by more than one year of imprisonment under one of the three federal drug statutes enumerated in § 924(c)(2).  In re L-G-, 21 I&N Dec. at 96. In other words, under the Board's strict "hypothetical federal felony" approach, the phrase "drug trafficking crime" meant any conviction punishable by more than one year of imprisonment under one of the federal drug laws.

This approach has received mixed reviews from the circuit courts.  In the civil immigration context, several circuits have adopted the Board's hypothetical federal felony approach.  E.g., Gonzales-Gomes v. Achim, 441 F.3d 532, 534-36 (7th Cir. 2006); United States v. Palacios-Suarez, 418 F.3d 692, 698-700 (6th Cir. 2005); Cazarez-Gutierrez v. Ashcroft, 382 F.3d 905, 912-18 (9th Cir. 2004); Gerbier, 280 F.3d at 308-12; Aguirre v. INS, 79 F.3d 315, 317-18 (2d Cir. 1996).  Under this approach, the underlying state classification of the offense is irrelevant.  The circuits that have adopted this approach emphasize that focusing solely on federal law properly accounts for the need to apply the nation's immigration laws uniformly, and that an approach that allows the vagaries of state law to influence the determination would defeat

this purpose.  See, e.g., Achim, 441 F.3d at 535; Gerbier, 280 F.3d at 311-12.

At least two circuits have taken a more flexible approach.  These circuits hold that a state conviction constitutes an "aggravated felony" if it (1) is punishable under one of the federal drug enforcement statutes, and (2) is a hypothetical federal felony or is a felony under the law of the convicting state.  E.g., Lopez v. Gonzales, 417 F.3d 934, 936-37 (8th Cir. 2005), cert. granted, 126 S. Ct. 1651 (2006); United States v. Hernandez-Avalos, 251 F.3d 505, 507-08 (5th Cir. 2001).  This "dual approach" derives from circuit decisions interpreting the meaning of "aggravated felony" in the criminal sentencing context.[2]

In light of the split in circuit authority, the Board retreated from strictly applying the hypothetical federal felony

_____

[2]The United States Sentencing Guidelines provide a sentence enhancement for aliens who, after having been previously deported following a conviction for an "aggravated felony," unlawfully return to or remain in the United States.  See U.S.S.G. § 2L1.2(b)(1)(C) (2005).  The Guidelines in turn define an "aggravated felony" by reference to the definition in the INA.  See id. § 2L1.2 cmt. n.3 (2005).  The majority of circuits that have confronted the "aggravated felony" question in this context have utilized the dual approach, finding that a felony drug conviction under state law can amount to a "drug trafficking crime" regardless of how the crime would be classified under analogous federal law. See, e.g., United States v. Sanchez-Villalobos, 412 F.3d 572, 574 (5th Cir. 2005); United States v. Ramirez, 344 F.3d 247, 251, 253-54 (2d Cir. 2003); United States v. Wilson, 316 F.3d 506, 512-13 (4th Cir. 2003); United States v. Ibarra-Galindo, 206 F.3d 1337, 1339-40 (9th Cir. 2000); United States v. Briones-Mata, 116 F.3d 308, 309 (8th Cir. 1997).  But see Palacios-Suarez, 418 F.3d at 697 -700 (adopting the hypothetical federal felony approach for both immigration and sentencing cases).

-13-

approach in all cases, in favor of applying the approach of the circuit in which the case before it originated. See In re Yanez-Garcia, 23 I&N Dec. 390, 396-98 (BIA 2002). In those circuits that have not definitively ruled on the issue, the Board follows the position taken by the majority of the circuits in criminal sentencing cases--the dual approach. Id.

In the present cases, the Board interpreted our precedent as applying the dual approach. Accordingly, the Board found that the petitioners' state drug offenses would constitute "drug trafficking crimes" if they were (1) punishable under one of the three statutes enumerated in § 924(c)(2), and (2) punishable as a felony under either federal or state law. See Amaral v. INS, 977 F.2d 33, 36-37 (1st Cir. 1992) (finding that petitioner had been convicted of an aggravated felony because his state drug offense would be a felony under federal law); United States v. Restrepo-Aquilar, 74 F.3d 361, 364-67 (1st Cir. 1996) (finding that the defendant was an aggravated felon because his state offense was a felony under state law and it violated the CSA). The Board found Amaral to control in both cases.

In Amaral, the Board found that the petitioner was an aggravated felon, and therefore deportable and ineligible for discretionary relief, because of three state court convictions for possession of cocaine. See 977 F.2d at 34. On review, we did not resolve the merits of the Board's decision because we lacked

jurisdiction.  Id. at 37.  Our jurisdictional ruling, however, required us to consider whether the petitioner was an aggravated felon under the INA.  Id. at 35 (noting that if the petitioner was an aggravated felon, his petition for review was untimely).[3]  In that case, as here, the question was whether any of the petitioner's state offenses was a "felony" under § 924(c)(2).  Because of § 924(c)(2)'s cross-reference to the CSA, we consulted the CSA's definition of "felony" as "any Federal or State offense classified by applicable Federal or State Law as a felony."  Id. at 36 (quoting 21 U.S.C. § 802(13)).  Although we noted that the petitioner's offenses were felonies under state law, we undertook a federal analysis of the petitioner's crimes.  See id. at 36 & n.3.  We concluded that, although a simple possession offense is ordinarily a misdemeanor under the CSA, see 21 U.S.C. § 844(a), "one prior conviction turns possession into a felony since the maximum penalty increases to over a year."  Amaral, 977 F.2d at 34.  Thus, we ruled that, "under [a] literal application of §§ 844(a) and 3559(a)," the subsequent possession conviction amounted to a felony under federal law.  Id.

---

[3]Under the INA at that time, aggrieved aliens were generally allowed 90 days to file a petition to review a final order of deportation, but aggravated felons were given only 30 days.  8 U.S.C. § 1105a(a)(1) (repealed 1996).  Under the current version of the INA, all aliens must file their petitions "not later than 30 days after the date of the final order of removal."  8 U.S.C. § 1252(b)(1).

-15-

Applying Amaral, the Board found that Henry's Massachusetts conviction, possession of marijuana with intent to distribute, is punishable under the CSA by a maximum of five years' imprisonment, see 21 U.S.C. § 841(a)(1), (b)(1)(D), and is therefore a felony under federal law, see 18 U.S.C. § 3559(a). The Board found that Berhe's 2003 conviction for simple possession, although ordinarily punishable as a misdemeanor under federal law, would be converted to a felony because of his previous possession conviction. See Amaral, 977 F.2d at 36; 21 U.S.C. § 844(a). Thus, the Board concluded that both Henry and Berhe had been convicted for "drug trafficking crimes" as defined in § 924(c)(2).

Petitioners argue that, because their respective state drug offenses were not classified as felonies by the convicting authority, they should not be considered aggravated felonies.[4] They contend that our holding in Restrepo-Aguilar mandates that the law of the prosecuting jurisdiction controls for purposes of determining whether an offense is a felony or misdemeanor. They

---

[4]Henry also argues that his underlying state offense -- possession of a controlled substance with intent to manufacture, distribute, dispense or cultivate, see Mass. Gen. Laws ch. 94C, § 32C(a) -- is not sufficiently analogous to any federal offense to be deemed "punishable under" one of the federal drug enforcement statutes. He argues that the Massachusetts statute to which he pleaded guilty is broader in scope than the closest federal analogue. Henry's argument is a nonstarter. Assuming arguendo that the Massachusetts statute is broader, the particular conduct to which Henry pleaded guilty, possession of a controlled substance with intent to distribute, is clearly punishable under the CSA. See 21 U.S.C. § 841(a)(1).

point out that in Restrepo-Aguilar, we found that a state felony conviction was a "felony" for purposes of § 924(c)(2) notwithstanding that it would have been a misdemeanor under federal law. See Restrepo-Aguilar, 74 F.3d at 364-65. Thus, the petitioners argue, we discarded the approach in Amaral (which they characterize as dicta) in favor of an approach that looks to the prosecuting jurisdiction to determine the classification of an offense. They contend that the word "applicable" in § 802(13)'s definition of "felony" requires us to consult the law actually applied by the convicting authority.

The petitioners misread our precedent. First, Amaral's ruling was not dicta. In Amaral, we were required to determine whether the petitioner had been convicted of an "aggravated felony" as defined in the INA, and in doing so, we employed a method that looked to the offense's hypothetical status under federal law. See id. at 36. Though we might have grounded our decision on the state's classification of the offense, we did not do so. See id. Cf. United States v. Johnson, 256 F.3d 895, 914 (9th Cir. 2001) (en banc) (noting that when a federal appellate court "confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is

necessary in some strict logical sense").[5]  Moreover, subsequent rulings of this court have followed the Amaral approach.  Less than two years after Amaral, we applied precisely the same analysis in a sentencing case.  See United States v. Forbes, 16 F.3d 1294, 1301 (1st Cir. 1994).  We found that the defendant's first state conviction for possession of a controlled substance would have converted his second state possession conviction into a felony under federal law.  See id. (citing 21 U.S.C. § 844(a); 18 U.S.C. § 3559(a)).  Although, as in Amaral, the underlying offenses were also felonies under state law, our application of the aggravated felony enhancement was predicated on our finding that the state offense was punishable as a felony under federal law.  See id. Forbes also suggests that a felony classification under either federal or state law will suffice to meet § 924(c)(2)'s "any felony" requirement.  See id.; see also United States v. Cuevas, 75 F.3d 778, 783 (1st Cir. 1996) (holding that the defendant's state drug offense "undoubtedly qualifies as a felony" because it is punishable as a felony under federal law).

---

[5]It is of little import that we did not resolve the merits of the Board's aggravated felony determination in Amaral.  To be sure, the "aggravated felony" question arose in a jurisdictional inquiry. See 977 F.2d at 35.  But the question presented, and the statutory language at issue, were precisely the same as that considered here. Our holding that the petitioner had been convicted of an "aggravated felony" was expressly premised on a finding that the offense was punishable as a felony under the CSA.  See id. at 36.

Second, Restrepo-Aguilar did not overrule or undermine Amaral. The defendant in Restrepo-Aguilar appealed the district court's application of the aggravated felon sentence enhancement. See 74 F.3d at 363 (citing U.S.S.G. § 2L1.2(b)(2) (1994)). Although we recognized that the definition of "aggravated felony" in U.S.S.G. § 2L1.2 was essentially the same as the definition in the INA, we declined to adopt the Board's precedent which, at the time, applied the strict hypothetical federal felony approach. See id. 366-67. We noted that the Board's rationale was based significantly on "policy concerns relating to the consequences flowing from a deportation decision or a decision on an application for asylum, without regard to any of the policies that inform the meaning of 'aggravated felony' in the context of the statutory prior offense enhancement or its implementation in the Sentencing Guidelines." Restrepo-Aguilar, 74 F.3d at 366. Viewing Amaral as enduring precedent, we were also careful to distinguish it based on the differing contexts. Id. at 366 n.6.

More importantly, however, we noted that our approach in Restrepo-Aguilar was entirely consistent with Amaral and Forbes. See id. We observed that our cases interpreted the phrase "drug trafficking crime" in § 924(c)(2) to encompass "two separate elements: (1) that the offense be punishable under the Controlled Substances Act (or one of the other two statutes identified); and (2) that the offense be a felony." Id. at 364 (citing Forbes, 16

-19-

F.3d at 1301; Amaral 977 F.2d at 36). We further observed that §
924(c)(2)'s definition of "drug trafficking crime," "by its terms
includes 'any felony' that is criminalized under the CSA." Id.
Thus, we found that the definition "does not limit its application
to offenses that would be classified as felonies" under federal
law. Id. (emphasis supplied). Moreover, we stressed that the
CSA's definition of "felony" provided further support for the idea
that a felony designation under either federal or state law would
be sufficient. See id. ("[T]he CSA itself defines a felony as 'any
Federal or State offense classified by applicable Federal or State
law as a felony.'") (quoting 21 U.S.C. § 802(13)). It is clear we
read "applicable" to mean, not the law actually applied, but,
consistent with the ordinary meaning of the word, the law "capable
of being applied." Merriam-Webster's Collegiate Dictionary 56
(10th ed. 2001). Thus, we held that a state drug conviction may
constitute an aggravated felony if it was classified as a felony
under state law (even if it would have been a misdemeanor under
federal law), but we did not suggest that a state offense could
constitute an aggravated felony only if it was classified as a
felony under state law. See Restrepo-Aquilar, 74 F.3d at 364-66.

Accordingly, we conclude that the Board was correct to
employ the hypothetical federal felony methodology outlined in
Amaral. For the purposes of determining whether a state drug
offense is an "aggravated felony" under the INA, our circuit

-20-

precedent permits an analysis that considers whether the underlying offense would have been punishable as a felony under federal law. As discussed above, we are not alone. While there is disagreement concerning whether it is permissible to consult state law in making the aggravated felony determination, as far as we can tell, all the circuits to have considered the issue agree that a state drug offense that would be punishable as a felony under the CSA is a "drug trafficking crime" under § 924(c)(2). See supra at 11-12. To our knowledge, no circuit has endorsed the approach urged here -- requiring that the underlying offense be a felony under state law.

**B.  Henry's Case**

Applying Amaral's hypothetical federal felony approach, the Board's determination that Henry is an aggravated felon is clearly correct. Henry's state conviction for possession of marijuana with intent to distribute, which would be punishable under the CSA by a maximum of five years' imprisonment, see 21 U.S.C. § 841(a)(1), (b)(1)(D), is a felony under federal law, see 18 U.S.C. § 3559(a). The Board therefore properly determined that Henry is ineligible for cancellation of removal. See 8 U.S.C. § 1229b(a)(3). We next consider Berhe's alternative arguments.

## C.  Berhe's Arguments

### 1.  Sufficiency of the evidence supporting the aggravated felony finding

Berhe argues that, even applying the hypothetical federal felony approach, his 2003 state drug possession conviction is not a felony under federal law because the 1996 conviction was neither charged nor proven during the 2003 proceeding.  He notes that under federal and Massachusetts law, a defendant must be charged with a prior conviction before the government can seek a recidivism-based sentencing enhancement.  See 21 U.S.C. § 851; Mass. Gen. Laws ch. 278, § 11A; see also Prou v. United States, 199 F.3d 37, 42, 44 (1st Cir. 1999) (holding that federal courts "lack[] authority to impose the statutory enhancement" where the government has not complied with the "strictly enforced" § 851 charging procedures).  Berhe acknowledges that both the state and the federal government (had it brought charges against him) could have sought a recidivism-based sentence enhancement which, if successful, would have resulted in a felony conviction under federal law.  But, because he was not so charged, and instead pleaded guilty only to simple possession of a controlled substance (which is only a misdemeanor under federal law because it is punishable by no more than one year in prison, see 21 U.S.C. § 844(a)), the government failed to establish that he was convicted of a hypothetical federal felony.

We agree.  Because Berhe's 1996 conviction is not a part of the record of the 2003 conviction, the government did not establish that Berhe was convicted of a hypothetical federal felony.  As recently articulated, this circuit applies a "modified categorical approach" for determining whether an alien has been convicted of an aggravated felony.  Conteh v. Gonzales, No. 05-1282, --- F.3d ---, 2006 WL 2406942, at *6-7 (1st Cir. 2006).  Under this approach, "the government bears the burden of proving, by clear and convincing evidence derived solely from the record of the prior proceeding, that (i) the alien was convicted of a crime and (ii) that crime involved every element" of one of the offenses enumerated in 8 U.S.C. § 1101(a)(43).  Id. at *7.  When the statute on which the underlying conviction rests necessarily involves all of the elements enumerated in one of the INA's definitions of aggravated felony, "proof of the fact of conviction suffices to discharge the government's burden."  Id.  Where, however, the underlying statute sweeps more broadly (i.e., encompasses crimes that are not necessarily aggravated felonies under the INA), "the government . . . must demonstrate, by reference only to facts that can be mined from the record of conviction, that the putative predicate offense constitutes a crime designated as an aggravated felony in the INA."  Id. (citing Taylor v. United States, 495 U.S.

-23-

575, 602 (1990); In re Pichardo-Sufren, 21 I&N Dec. 330, 335-36 (BIA 1996)).[6]

As noted above, the underlying state statute here encompasses crimes that ordinarily would not constitute felonies under either state or federal law. Compare Mass. Gen. Laws ch. 94C, § 34, with 21 U.S.C. § 844(a) (both setting a maximum term of imprisonment of one year for "knowingly or intentionally . . . possess[ing] a controlled substance"). Therefore, we must look to the record of conviction of the alleged aggravated felony to determine whether the government met its burden of proving that Berhe had a prior conviction for a drug offense. See 21 U.S.C. § 844(a) (noting that if an offense for simple possession is committed after a prior conviction for a drug offense has become final, the maximum penalty increases to two years' imprisonment). The record of Berhe's 2003 conviction in state district court -- the criminal complaint alleging misdemeanor possession of crack cocaine and the official criminal docket indicating Berhe's plea of guilty to that charge -- contains no reference to Berhe's 1996 conviction. Both the criminal complaint and the docket clearly

---

[6]In Conteh, we outlined the contours of the "record of conviction." We held that the alien's testimony at his removal hearing, where he admitted to facts relevant to the aggravated felony determination, was not a part of the underlying record of conviction and therefore could not be considered in determining whether the conviction was for an aggravated felony. Conteh, 2006 WL 2406942 at *9-10; see id. at *9 ("[T]he record of conviction cannot encompass after-the-fact statements made in a separate and subsequent proceeding.").

indicate that Berhe was charged and convicted of the misdemeanor crime (under both Massachusetts and federal law) of simple possession of a controlled substance punishable by no more than one year in prison.[7]

Because the record of conviction here contains no reference to Berhe's prior conviction, or to any other factor that would hypothetically convert his 2003 state misdemeanor conviction into a felony under federal law, the Board erred by concluding that his 2003 conviction was an "aggravated felony" under 8 U.S.C. § 1101(a)(43). The Board therefore also erred in concluding that Berhe is ineligible for asylum and cancellation of removal. Hence, we must remand so that it may consider the merits of those claims. See INS v. Ventura, 537 U.S. 12, 16 (2002) (noting that a court of appeals should ordinarily "remand a case to an agency for decision of a matter that statutes place primarily in agency hands").

## 2. Withholding of removal

Berhe also argues that the Board erred in reversing the immigration judge's decision granting him withholding of removal.

---

[7]Amaral does not control our consideration of this issue. Although it appears that the Board in Amaral found the existence of prior convictions based on the petitioner's admissions in removal proceedings, 977 F.2d at 34, it is not clear whether the petitioner simply testified to the fact of these prior convictions or stipulated to their existence and their validity. See Conteh, 2006 WL 2406942 at *9 n.5. In any event, it does not appear that this issue was litigated in Amaral. Whatever the basis of our finding that the petitioner had prior convictions in that case, Conteh now limits our examination to the record of conviction.

-25-

He contends that the Board did not base its decision on substantial evidence and failed to explain sufficiently why it chose to disregard the immigration judge's conclusions. At oral argument, and in a supplemental post-argument filing, the government argues that the Real ID Act of 2005 strips us of jurisdiction to review Berhe's claim for withholding of removal. See 8 U.S.C. § 1252(a)(2)(C) (divesting jurisdiction to review "any final order of removal against an alien who is removable by reason of having committed a criminal offense" in violation of a law relating to controlled substances). Because Berhe was found removable based on a controlled substance offense, the government argues, this court may review only "questions of law" and "constitutional claims." Id. § 1252(a)(2)(D) (preserving our jurisdiction for such claims). The government contends that Berhe's withholding of removal claim does not present any legal or constitutional issues. Berhe counters that the adequacy of the Board's reasoning is a legal question that we may review. Berhe is correct. See Enwonwu v. Gonzales, 438 F.3d 22, 35 (1st Cir. 2006)

During removal proceedings, Berhe, appearing pro se, asserted that he feared religious persecution on the basis of his status (or imputed status) as a member of the Jehovah's Witnesses. The immigration judge found "no evidence that this would be held against him" in Eritrea, but granted Berhe's application for withholding of removal on another ground. The judge found that

documentary evidence (presumably the State Department country reports) established that conditions in Eritrea are "generally bad," that the ruling regime is "quite brutal," and that "people who are deemed sympathetic in any way to critics [of the government] are detained and subjected to severe mistreatment." Thus, crediting Berhe's testimony that he "came to the United States as a refugee and has continued to seek asylum even after becoming removable," the judge found that, upon return to Eritrea, he would likely be targeted for persecution "as a suspected critic of the Eritrean government."

On appeal, the Board found that "there is no basis to find that it is more likely than not that the respondent would be subjected to persecution based upon the religion of his adoptive parents." Nowhere, however, did the Board engage the immigration judge's rationale for granting Berhe's application for withholding of removal.[8]

---

[8]In noting that there was no allegation of past persecution, the Board did call into question Berhe's refugee status on his admission to the United States, noting the lack of "information . . . explain[ing] the basis for this admission." But regardless of the reason for Berhe's refugee status, the record is uncontradicted that Berhe was admitted as a refugee. In fact, at the removal hearing, the government proffered documents, relating to Berhe's approved application for adjustment to lawful permanent resident status, that establish that he was admitted as a refugee at New York City in 1987.

We note that the Board also misstated Berhe's claim for relief. On our review of the record, we see no allegation that he feared persecution because his adoptive parents were Jehovah's Witnesses. Rather, he claims that it was his birth mother who was a Jehovah's Witness.

We agree with Berhe, therefore, that this case is controlled by Enwonwu. See 438 F.3d at 35 (holding that, where the Board's reversal of an immigration judge's grant of relief under the CAT only addressed one of the two findings made by the judge in support of its decision, the Board's opinion was "insufficiently reasoned as a matter of law"). Although we have previously noted that the Board "need not spell out every last detail of its reasoning where the logical underpinnings are clear from the record," there is a heightened obligation "to offer more explanation when the record suggests strong arguments for the petitioner that the [Board] has not considered." Id. (quoting Sulaiman v. Gonzales, 429 F.3d 347, 350 (1st Cir. 2005)). We agree with Berhe that there was adequate support in the record for the immigration judge's finding, and that it was therefore an error of law for the Board to reverse without addressing that finding. The proper course, therefore, is to remand to the Board for further consideration of Berhe's claim for withholding of removal. See id.; see also Ventura, 537 U.S. at 16-17.

### 3.  Convention Against Torture

Finally, Berhe argues that the Board erred in refusing to consider his claim for relief under the CAT. The Board held that Berhe had waived his CAT claim by failing to inform the immigration judge of his intention to appeal. See Matter of Shih, 20 I&N Dec. 697, 698-99 (BIA 1993). The Board further noted that Berhe's

Notice of Appeal, which was filed six months after the immigration judge's decision, was untimely. See 8 C.F.R. § 1003.38(b). In his petition, Berhe contends, and the government concedes, that the immigration judge failed to advise Berhe of his right to appeal the decision to deny him protection under the CAT. He argues, therefore, that he could not have knowingly and intelligently waived his right to appeal. We agree.

The regulations governing immigration proceedings require that "[a] party affected by a decision of an immigration judge which may be appealed to the Board . . . shall be given notice of the opportunity for filing an appeal." Id. § 1003.3. Cf. 8 U.S.C. § 1229a(c)(5) (requiring the immigration judge to "inform the alien of the right to appeal" from an order of removal). The Board has previously recognized that any waiver of the right to appeal must be made "knowingly and intelligently." In re Rodriguez-Diaz, 22 I&N Dec. 1320, 1322 (BIA 2000); see also Shih, 20 I&N Dec. at 698-99 (finding waiver where the alien was specifically informed of the consequences of his waiver).

In this case, the immigration judge both failed to inform Berhe of his right to appeal and affirmatively suggested that Berhe had no reason to appeal. At the close of proceedings, after having asked DHS's attorney whether she wished to appeal, the immigration judge told Berhe: "I've granted your applications for relief. Did you understand all of that?" Further assuring Berhe of the

completeness of his victory, the judge stated: "If the Government does not actually file an appeal, you will be released." No reference was made to any right of cross-appeal or to the peril that Berhe's inaction could result in his waiving the CAT claim. Nor was any subsequent notice sent to Berhe informing him of his right to appeal.

In these circumstances, the Board erred by ruling that Berhe "knowingly and intelligently" waived his right to appeal the rejection of his CAT claim. The equities weigh especially in Berhe's favor, given that he was not represented by counsel. See Rodriquez-Diaz, 22 I&N Dec. at 1323 (stressing that "in cases involving unrepresented aliens, more detailed explanations [of the alien's right to appeal] are often needed"). Nor should Berhe be faulted for the late filing of his Notice of Appeal. The Board's bar against hearing untimely appeals is inapplicable in these circumstances. See Zhong Guang Sun v. United States Dep't of Justice, 421 F.3d 105, 108-09 (2d Cir. 2005) (collecting cases recognizing that the Board's bar has an exception for unique or extraordinary circumstances beyond the alien's control); Vlaicu v. INS, 998 F.2d 758, 760 (9th Cir. 1993) (per curiam) (holding that the Board "may have jurisdiction to hear an otherwise untimely appeal" in "unique circumstances," such as when the appellant "was misled by the words or conduct of the [immigration] court") (internal quotation marks omitted). And the government should not

be allowed to benefit from the immigration court's failure to follow its own regulations. <u>Nelson</u> v. <u>INS</u>, 232 F.3d 258, 262 (1st Cir. 2000) ("An agency has the duty to follow its own federal regulations," and failure to follow those regulations "can lead to reversal of an agency order and a new hearing"). We believe that such a remand is the proper course here.

## III.

For the reasons stated, Henry's petition for review is **<u>denied</u>**, and Berhe's petition is **<u>granted</u>**. The Board's order of removal in Berhe's case is **<u>vacated</u>**, and the case is **<u>remanded</u>** to the Board for further proceedings consistent with this opinion.